THE STATE OF CONNECTICUT *vs.* GEORGE YANZ.

<table><tr><td>74</td><td>177</td></tr><tr><td>75</td><td>334</td></tr></table>

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Upon a trial for murder the accused claimed to have killed the decedent while he was committing adultery with the former's wife. *Held* that an endearing expression respecting the deceased, uttered by the wife after the homicide and after she had left the scene, was mere hearsay and inadmissible in behalf of the defendant.

Malice essential to the crime of murder in the second degree under our statute (§ 1399), is not to be implied if the fatal act was the sudden result of what the law deems either a sufficient provocation, or an uncontrollable passion naturally excited by the circumstances of the occasion.

Accordingly, if the homicide is committed in a transport of passion upon discovering the decedent apparently in the act of adultery with the wife of the accused, under circumstances such as to induce and justify a reasonable belief on the part of the accused that such a crime was in progress, and there is no proof of actual malice, the offense is manslaughter only, although it subsequently turns out that adultery was not in fact being committed. (*Two judges dissenting.*)

Where inconsistent directions are given to the jury, and the accused is

convicted, it is to be presumed that the instructions last given, especially if least favorable to the prisoner, were accepted by the jury as controlling.

Argued June 14th—decided September 27th, 1901.

INDICTMENT for murder in the first decree, brought to the Superior Court of New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment of guilty of murder in the second degree, and appeal by the accused for alleged errors in the rulings and charge of the court. *Error and new trial granted.*

The defendant, upon the trial, introduced evidence, mainly from himself as a witness in his own behalf, that on the day in question he discovered his wife in a piece of woods near his house with a man whom he did not recognize; that they were partially reclining on the ground, and the man had his arms around her; that thinking the man might be armed he ran home and got his rifle; that he returned, loading it as he ran, and found her in the man's arms, lying on her back, with her clothes up, and the man in a position justifying the belief that they were in the act of adultery; that he rushed upon them through the bushes, and in so doing the rifle was accidentally discharged, killing the man.

The State claimed and offered evidence tending to prove that he had previously made statements materially different, as to the circumstances of the homicide; that the man killed, George Goering, had been on friendly and familiar terms with Yanz, and was well acquainted with Mrs. Yanz; that he had occasionally called upon the defendant at his house; that on this occasion the defendant found him standing in the woods in conversation with Mrs. Yanz, and having got his rifle and loaded it deliberately shot him as he (Goering) was walking away.

Immediately after the homicide Mrs. Yanz, who was greatly excited, was assisted into her house by a neighbor, Mrs. Week, who laid her upon the lounge. This question was put to Mrs. Week on the witness-stand, as a witness for the defense: "At the time you took Mrs. Yanz in and placed

her upon the lounge, did she say anything concerning George Goering?" Yanz was not then in the house. The defendant claimed that an answer would show that she used an endearing expression in regard to Goering. This question was excluded.

The defendant through his counsel claimed that if the jury should not believe his story that the shooting was accidental or involuntary, then at the very most he could only be convicted of manslaughter.

*William C. Case* and *Jacob P. Goodhart*, for the appellant (the accused).

*William H. Williams*, State's Attorney, with whom was *Alfred N. Wheeler*, Assistant State's Attorney, for the appellee (the State).

BALDWIN, J.  There was no error in excluding the question put to Mrs. Week. It called for mere hearsay. The homicide had taken place and Mrs. Yanz had left the scene of the transaction. Her declarations could not have served to characterize any contemporaneous act, and therefore could not be claimed as part of the *res gestæ*. That she could not be compelled herself to take the witness-stand was no cause for their admission.

The trial court in its charge to the jury used this language: "If the accused saw his wife in any such situation as he has described, he had at least a legal right to interfere and separate them, and to carry with him a weapon for defense against any possible attack. And further, if in pushing his way through the bushes, and under the excitement naturally and ordinarily to be expected under the circumstances, the rifle was accidentally discharged, and the man thus met his death, then the homicide was by misadventure, and the verdict should be 'Not guilty.'" "There is one kind of provocation, gentlemen, which is of such a grievous nature that the law concludes it cannot be borne in the first transport of passion. This is where or when a man finds

another in the act of adultery with his wife; when, if he kills him in the first transport of passion, thereby aroused, he is only guilty of manslaughter. The law does not hold him altogether guiltless of crime: to kill even in the first transport of passion, when under that highest and strongest provocation, is in law criminal. It is manslaughter, the lowest form of criminal homicide; not murder. The adulterer under our law has a right to live; and the injured husband has no legal right to kill him, even in the first transport of passion aroused by finding him in the act. To have the effect of reducing the homicide from murder to manslaughter, the husband must find the adulterer in the act of adultery. The finding may be by any such observation of the circumstances and of the situation of the guilty parties as justifies the belief that adultery is being committed. Knowledge that the adultery is at the time being committed is sufficient; but if the husband, merely hearing that the adultery had already been accomplished, or merely observing the situation which leads to the belief that adultery has been accomplished, pursues and kills the offender, it will be murder. The witnessing of a passing fact is regarded as having a greater tendency to excite a transport of passion than the mere hearing or the mere belief that it has been accomplished. If, in fact, no adultery was going on, and the husband is mistaken as to the fact, though the circumstances were such as to justify a belief, even, of adultery the offense would not be reduced to manslaughter. The husband must judge at his peril that the jury may find that he was mistaken, and so find him guilty of murder instead of manslaughter."

There are inconsistent expressions in these instructions, but it is to be presumed that those used last were accepted by the jury as controlling; and they were the least favorable to the accused.

In case, then, they believed so much of the defendant's testimony as described the circumstances in which he found his wife and Goering together, and the effect which they produced and were reasonably calculated to produce upon

his mind, but disbelieved his statement that the gun was accidentally discharged, the charge gave them to understand that if the act of adultery was not in fact committed, the killing was murder.

The law justifies a jury in calling it but manslaughter when, on finding his wife in the act of adultery, a man, in the first transport of passion, kills her paramour. This is because from a sudden act of this kind, committed under the natural excitement of feeling induced by so gross an outrage, malice, which is a necessary ingredient of the crime of murder, cannot fairly be implied.

The excitement is the effect of a belief, from ocular evidence, of the actual commission of adultery. It is the belief, so reasonably formed, that excites the uncontrollable. passion. Such a belief, though a mistaken one, is calculated to induce the same emotions as would be felt were the wrongful act in fact committed.

The crime of murder in the second degree, under our statute, § 1399, rests upon implied malice. It is not sufficient to establish merely a criminal intent followed by a homicide. Malice is not to be implied if the fatal act was the sudden result of what the law deems either a sufficient provocation or an uncontrollable passion naturally excited by the circumstances of the occasion. *State* v. *Johnson*, 41 Conn. 584, 587, 588. The law deems a husband's passion, excited by surprising his wife in the act of adultery, so far uncontrollable, from the frailty of human nature, that if he kill her paramour on the impulse of the moment, and no actual malice is disclosed, none ought to be implied. He is not justified; but he is not a murderer. The reason of this rule of law being the existence of an uncontrollable passion, naturally induced, it must logically follow that it suffices if such a passion has been naturally induced in the mind of the slayer by the sight of his wife in the embrace of the man whom he killed, and a reasonable belief of her guilt, formed under circumstances such as those to which the accused testified in the present case. If the jury believed this testimony, or so much of it as showed a state of facts which, in their

opinion, justified and produced a reasonable belief on the part of the accused that adultery was being committed when the shot was fired, then, there having been no proof of actual malice, although they may also have believed that it was fired intentionally, the natural excitement of passion and want of premeditation make the offense manslaughter. *Morris* v. *Platt*, 32 Conn. 75, 83.

There is error, the judgment is set aside, and a new trial is ordered.

In this opinion TORRANCE and HALL, Js., concurred.

HAMERSLEY, J. (dissenting). The particular passage of the charge claimed to be erroneous, is this : " If, in fact, no adultery was going on, and the husband is mistaken as to the fact, though the circumstances were such as to justify a belief, even, of adultery, the offense would not be reduced to manslaughter."

The statement is correct. The particular form of manslaughter the court was called upon to explain, was this : an intentional killing in a transport of passion induced by an immediate wrong done to the killer by the person killed, which the law deems to be of such nature that the ordinary man is unable, under the first sting of its infliction, to control a natural impulse to punish the offender. Such an injury, if unprovoked, constitutes a provocation which may render the immediate killing of the offender, in the transport of sudden anger caused by the injury received, manslaughter, and not murder.

It is a principle common to most systems of jurisprudence, arising from essential conditions of life, that the punishment for unjustifiable, intentional killing, should be less severe when the fatal blow is impelled by a transient rage reasonably induced by and immediately following a wrongful act done by the person killed to the slayer. Such wrongful act constitutes legal provocation, which demands the milder punishment; that is, under our law reduces murder to manslaughter.

It should, however, be remembered, that to call for the milder punishment the killing must be in fact the result of a sudden rage, difficult for the ordinary man to control, directly induced by a grievous injury. If in fact it is the result of the cruel spirit of revenge that must have life for a wrong, it is murder, no matter what the provocation may be. In drawing the line between the crimes of murder and manslaughter, the law utterly repels the notion that killing in revenge can be less than murder. The cases in which particular facts have been held to show legal provocation, point to a principle, common to all, by which each is determined, and suggest its foundation, namely: when the mind of the slayer is not possessed by that conscious cruelty indicated by voluntary killing, but by a sudden transient rage, being the natural product of an injury then done to him by the person killed, the offense may be manslaughter.

Mere rage is insufficient; it must arise directly from an injury then received, which must be as real as that caused by a severe battery. Mere insult is insufficient in law to produce this rage, unless it involves some grievous injury—not a fanciful one such as may result from mocking words or gestures, but a substantial injury such as may be caused in some conditions of life by an unpunished personal affront, or such as may be suffered by a husband or father in the degradation of his wife or child. It is the combination of adequate insult and injury received, of sudden and uncontrollable transient rage thereby naturally produced, and of unlawful killing directly resulting from that rage, which marks such killing as manslaughter.

The essence of the common law as affecting the distinction between murder and manslaughter (excluding some arbitrary tests) is this: murder implies the presence, as dominating a voluntary act causing death, of an inhuman or unnaturally cruel state of mind: manslaughter implies its absence. It is thus stated by Lord Holt in 1707: "He that doth a cruel act voluntarily, doth it of malice prepensed." *Regina* v. *Mawgridge*, Kelyng, 119 *et seq.* Sir J. F. Stephen characterizes this definition of malice aforethought as correct

and happy, and with the insertion of the words, " or cruelly reckless," as solving nearly all questions as to the distinction between murder and manslaughter.    3 Steph. Hist. Cr. Law of England, pp. 70, 73.    Russell thus explains what may be involved in a cruel act:  " Violent acts of resentment, bearing no proportion to provocation or insult, are barbarous, proceeding rather from brutal malignity than human frailty; and barbarity will often make malice."    1 Russ. on Crimes (9th Amer. Ed.) 713.

Intentional unlawful killing is necessarily a cruel act which implies murder, but when the person killed is himself the aggressor, through giving a provocation adequate to produce a sudden anger and impulse to punish the wrong, sufficient to dominate the will of the killer, the inherent cruelty of the act is so far modified as to make the offense manslaughter.    Provocation, therefore, is legally effective, because for the moment it prevents, subdues, or excludes from the mind of the criminal actor, that unnatural cruelty which is the earmark of murder, through the controlling presence of a natural rage immediately induced by an adequate injury.    The essential test of an adequate injury is its inherent and judicially known capacity, under existing social conditions, to cause such rage, as a rule, when inflicted on the ordinary man.

The conditions to which this part of the charge applied were these:  (1) an admittedly intentional, unlawful killing;  (2) in a transport of rage ;  (3) induced by an injury and insult, done to the defendant, by adultery committed with his wife, in his presence.    To make the offense manslaughter the injury must have been done.    Intentional unlawful killing in a rage is murder, and not manslaughter. Anger, thirsting for the blood of an enemy, is in itself an earmark of murder, no less than revenge or brutal ferocity ; but when it is provoked by the wrongful act of the person slain, who thus brings upon himself the fatal blow, given in the first outbreak of rage caused by himself, the offense is manslaughter; not only because the voluntary act is, in a way, compelled by an ungovernable rage, but also because

the victim is the aggressor, and his wrong, although it cannot justify, may modify, the nature of the homicide thus induced. The court therefore correctly told the jury that to make the offense manslaughter the injury claimed as a provocation must have in fact been done. Our law of homicide recognizes no provocation as legally competent to so modify the cruelty of intentional, unlawful killing as to reduce the offense to manslaughter, except the provocation involved in an actual and adequate injury and insult. A different rule of provocation applies when the killing is not intentional, as where it results from the use of force not intended and not naturally adapted to cause death. But where the killing is both intentional and unlawful, the only legal provocation is that given by an actual injury and insult.

The decision of the majority of the court is based on the assertion that the intentional, unlawful killing of an innocent person who has done the slayer no wrong, may be manslaughter; or, in other words, an actual injury done to the slayer is not essential in order to reduce such killing from murder to manslaughter.

I find no authority in our law for this assertion. During the three centuries in which the distinction between the crime of murder and that of manslaughter has been developed and established, there is, so far as I have been able to discover, no *dictum* of jurist, or decision of court, which has failed to recognize the necessity of an actual injury and insult given by the killed and suffered by the killer, as necessary to the reduction of intentional, unlawful killing from murder to manslaughter. It seems to me unquestionable that the decision involves a clean cut and radical change of existing law. I think such a change would be unwise and inconsistent with the considerations of public policy that underlie our law of homicide. It is, however, unnecessary to discuss the wisdom of the change, for it is one within the province of the legislature and not of the court to make. The only authority cited in the opinion of JUDGE BALDWIN, as supporting its position that a belief in an injury may be equivalent in effect in this case to an actual injury, is the

case of *Morris* v. *Platt*, 32 Conn. 75, 83. If the court may properly change the law heretofore clearly established, so that an honest belief in an imaginary injury can make manslaughter of murder, then there is no need for the citation of authority; its *ipse dixit* is sufficient; but as the law stands the case cited is wholly irrelevant. In *Morris* v. *Platt* the court was dealing with a homicide claimed to have been committed in the exercise of the right of self-defense, and correctly stated the law applicable to such a case, namely: killing in self-defense is not a crime. The right of self-defense includes the right of protection against a reasonably apprehended danger; otherwise the right of self-defense would in most cases be an impotent right. A well-grounded apprehension of danger, as well as a certainly existing danger, may justify a killing in self-defense. The lawfulness of the act is determined, not by the fact of an actually existing danger, but by the fact of an honest, reasonable and well-grounded belief in its existence.

In this case the court is dealing with an admittedly intentional and unlawful killing, and the crime is murder unless the person so intentionally killed had himself given a provocation consisting in an actual grievous injury and insult. There is no analogy between the two cases. The principle governing the former case—that the right of self-defense justifies killing done to prevent a reasonably apprehended danger—is well settled. The principle governing this case—that intentional, unlawful killing is murder unless provoked by an adequate injury and insult—is equally well settled.

The argument of the opinion seems to be this: A reasonable belief in an existing danger may justify killing in self-defense, and in such case the reasonable belief is equivalent to the fact of existing danger; *ergo* a reasonable belief in a nonexisting injury is equivalent to the actual injury essential to reduce the crime of intentional, unlawful killing from murder to manslaughter. Such logic is not convincing. It is plain that unless the alteration in the law announced in the majority opinion is justifiable, that the error imputed to the charge cannot be sustained.

That alteration provides that intentional, unlawful killing, done in anger reasonably aroused, may be manslaughter, although the killer has received no injury and the person killed is innocent of any wrong. Such alteration seems to me plainly unjustifiable.

If there is any mistake in the particular passage of the charge, it is the statement of a general rule not material in the state of evidence before the jury. The only question, in respect to the alleged injury claimed as a provocation, was the truth or falsity of the testimony describing the positions of the defendant's wife and the deceased just prior to the firing of the fatal shot. The defendant testified that he discovered his wife upon the ground, lying on her back with her clothes up, and the man in the position detailed, and which the finding says justified the belief that they were engaged in the act of adultery. There was no qualifying evidence. If the testimony was credible, adultery had been committed and the injury alleged had been given. There was, therefore, no occasion to state the rule of law applicable to a state of facts which might justify a reasonable belief that adultery had been committed and also show that in fact it had not been. The court might properly have omitted reference to a rule applicable to the state of fact as claimed; or, possibly, if the reference were made, might properly have added that if the conduct of the deceased with the prisoner's wife did not satisfy the jury that adultery had been committed, yet the conduct detailed was in itself a grievous injury and insult, and a legal provocation.

That such conduct is a legal provocation, seems to me demonstrable; but such question is not now involved and no claim in respect to it is made. If it were a mistake to state the rule of law governing a case where there was a reasonable belief in adultery, which was in fact unfounded, the mistake was harmless, and would not be less harmless if the qualification suggested had been made. The record shows with certainty that the only question before the jury as to this part of the case was the credibility of the defendant's testimony as to the fact of adultery. If credible,

adultery had been committed and the offense was manslaughter. Upon this question the charge of the court is clear, full and impartial. It could not have been misunderstood, and could not have been affected by the statement, in the general definition of legal provocation, as to the necessity of proving the fact of adultery. Neither court nor counsel contemplated the contingency of the jury finding as a fact the circumstances under which the parties were claimed to have been discovered, and also finding that no adultery had been committed. There was no such contingency,—it involved an absurdity approaching grotesqueness; and yet a new trial cannot be lawfully granted without gravely assuming the probability of the verdict having been influenced by such an absurdity. A mistake, or even an error, in the passage of the charge objected to, would relate to a state of facts not before the jury, was rendered harmless by those portions of the charge directly dealing with the evidence, and could not have affected the conclusion of the jury. The defendant has had a fair trial. The charge of the court is correct in law, and full and impartial in its review of the evidence and in its presentation of all claims made by the parties; and even if the passage objected to might properly have been omitted or qualified, there is no ground for a new trial. *State* v. *Griswold*, 73 Conn. 95, 100. I think there is no error and that a new trial should be denied.

In this opinion ANDREWS, C. J., concurred.