THE STATE OF CONNECTICUT *vs.* JOSEPH CASTELLI AND FRANCESCO VETERE ALIAS FRANK VETTER

Third Judicial District, New Haven, June Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

In the interest of justice, those who are jointly indicted are ordinarily to be tried together; and the mere fact that evidence will be offered against one which is inadmissible against the other or others, does not necessarily require a separate trial for each. The question is still one for the exercise of a sound discretion, the controlling consideration being whether a joint trial is likely to result in substantial injustice to either of the accused.

Upon a prosecution for murder in the first degree, each of the two accused, who were deaf mutes, had made a full written confession of facts which, if legally corroborated, was sufficient to convict its author of that crime. *Held* that in view of the precautions taken in the admission of their confessions, and again in the charge of the court, it could not be assumed that the jury were improperly influenced by any corroborative effect given to evidence inadmissible against one of the accused which was received as against the other only; and that the trial court's denial of a motion by one of the accused for a separate trial was not an abuse of its judicial discretion.

Ordinarily the decision of a trial court upon a preliminary and collateral question of fact will be reversed only for clear and manifest error; and this rule is equally applicable to the determination of the question whether substantial injustice is or is not likely to result from a joint trial of persons jointly indicted.

Upon the preliminary issue as to whether confessions of the accused were procured by threats or inducements, the trial court may in its discretion allow leading questions and questions calling for conclusions of fact.

All statements in the nature of confessions are admissible, notwithstanding their supersession or merger in a final and detailed confession made in writing to the coroner.

A confession made by one of the accused is not rendered inadmissible because he was undoubtedly influenced in making it by seeing his associate engaged in making a similar statement, which, he was truthfully informed, gave the whole story of the homicide.

Having once been fully warned that anything he might say might be used against him, and having then made a full confession, one of the accused a week later, upon request, voluntarily rehearsed the steps taken by him and his associate at the scene of the murder.

*Held* that evidence of such rehearsal was admissible against him
without proof of another and further warning.

After the confessions had been received in evidence, following the proof
of their voluntary character and after the State had rested, one of
the accused testified, in his own defense, that an officer had struck
him repeatedly with a piece of hose before he made his statement.
*Held* that under these circumstances the trial court properly
charged the jury that if they found the accused were frightened or
forced to make their confessions by the conduct or abuse of the
officer having them in charge, they should disregard the state-
ments as of no value.

No error is committed in treating written confessions as exhibits, and
in allowing them, like any other exhibits, to go to the jury-room.

It is for the trial court to determine whether the evidence of the loss of
writings is sufficient to admit secondary proof of their contents.

Papers taken from the person of one of the accused tending to show
unfriendly or hostile relations between himself and his wife whom
he was charged with having murdered, are admissible in evidence
against him.

The statements or declarations of an accused inconsistent with his
plea of innocence—like any other relevant fact inconsistent with
such plea—are admissible as evidence against him.

Having explained to the jury at great length what "reasonable doubt"
meant, the trial court at one point in its charge used the phrase
"considerable doubt" instead of the usual formula. *Held* that
the jury could not have been misled by this inadvertence.

It is the duty of the jury and not of the court to remember the evidence
and claims of the parties correctly, and if they are so informed,
the omission of the court to call their attention to some single bit
of evidence or claim is not reversible error.

The trial court is not bound to use the phraseology of counsel in prefer-
ence to its own in stating familiar propositions of law to the jury.

A husband who, on his own story, suspects his wife is going to commit
adultery and follows her to another city, seventy miles away, con-
ceals himself in a closet armed with a deadly weapon awaiting the
materialization of the expected provocation, and then kills her,
cannot claim that his crime is thereby reduced from murder to
manslaughter.

While one of two jointly accused cannot be convicted upon the unsup-
ported testimony of the other, yet if the other chooses to testify in
his own defense, his testimony, though not that of a full witness, is
relevant so far as it tends to prove or disprove the existence of the
crime outlined in the former's confession.

The evidence in the present case reviewed and *held* to abundantly
corroborate the confessions made by each of the accused.

Argued June 2d—decided July 6th, 1917.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven County and tried to the jury before *Reed, J.;* verdict and judgment of guilty, from which each of the accused appealed. *No error on either appeal.*

The defendants were jointly indicted for the murder of Annie, the wife of Castelli, who was found in a bedroom at 260 Crown Street, New Haven, on Easter Sunday, April 23d, 1916, suffering from severe fractures of the skull, of which she died on the following day. The deceased and each of the accused were deaf mutes.

On the 26th of April both of the accused were apprehended in New York in connection with an inquiry into the disappearance from New York of Annie Castelli. While the inquiry was in progress the coroner for New Haven county arrived, and the identity of the missing woman with the murdered woman was established. Each one of the accused freely made a full confession to the coroner, in which each, separately from the other, described the killing in substantially the following way:—

Castelli, for reasons given, was tired of his wife and desired to get rid of her. He induced Vetere to plan and carry out a pretended elopement for the purpose of bringing Annie to New Haven, where Castelli was to kill her. Pursuant to this conspiracy Vetere induced Annie to accompany him to New Haven and took her to a lodging-house at 260 Crown Street, where they obtained a room, representing themselves as man and wife. They then went out to lunch and Vetere found an opportunity of leaving Annie and informing Castelli, who had followed them on the same train, of the whereabouts of the room and how to open the front door at 260 Crown Street. After lunch Vetere and Annie went back to their room, where Cas-

telli had in the meantime concealed himself in a closet armed with a piece of iron pipe. Vetere kissed Annie and after some lovemaking went to the front window. Vetere says that Annie appeared to fall asleep. Castelli then came out of the closet and struck her on the head with the pipe, inflicting the wounds from which she afterward died. Castelli and Vetere then took Annie's jewelry and money and returned together on the same train to New York. On the way down Vetere, at Castelli's suggestion, wrote a postal card to the effect that Annie had eloped, addressed it to Castelli and mailed it on reaching New York. This postal card was produced and put in evidence at the trial. That evening they both went together to a social entertainment.

Each of the confessions was admitted in evidence against the party who made it, but not as against the other accused. The State also proved the death and identity of Annie Castelli, the fact that she and Vetere were seen together at the boarding-house, that Annie was left alone in the restaurant for a time and rejoined by Vetere, and that Vetere was seen leaving the boarding-house alone with a bag. Annie's jewelry was recovered from the person to whose custody Vetere had committed it.

On the trial each of the defendants went upon the witness-stand and admitted all the physical facts recited in their respective confessions, but Vetere claimed that the elopement was a genuine one, and Castelli claimed that he learned of it by seeing Annie and Vetere conversing about it in the sign language, followed them to New Haven without Vetere's knowledge, ascertained by observation where their room was at 260 Crown Street and found his way there without the assistance of Vetere, concealed himself in the closet armed with a piece of iron pipe, and that he became

enraged at the behavior of Annie and Vetere and killed his wife under the influence of uncontrollable rage.

*William A. Bree* and *John Cunliffe, Jr.,* for the appellant (Castelli, one of the accused).

*Spotswood D. Bowers* and *Samuel E. Hoyt,* for the appellant (Vetere, one of the accused).

*Arnon A. Alling,* State's Attorney, with whom was *Walter M. Pickett,* Assistant State's Attorney, for the appellee (the State).

BEACH, J. At the opening of the trial Vetere moved for a separate trial, on the ground that it would appear from the coroner's finding and notes that there was evidence in the case admissible against one and not admissible against the other of the accused. Castelli made no motion for a separate trial. Vetere's motion was opposed by the State's Attorney on the ground that the crime was committed in carrying out a conspiracy to murder the deceased, and that as to any items of evidence which might be admissible against Castelli only, Vetere could be adequately protected by a proper instruction to the jury. The court overruled the motion and directed the accused to be tried together, and this is assigned as error by both of the accused.

The rule as to granting separate trials to persons jointly indicted is stated in *State* v. *Brauneis,* 84 Conn. 222, 226, 79 Atl. 70, as follows: "Whether a separate trial shall be allowed to parties jointly indicted is within the discretion of the court. Ordinarily justice is better subserved where the parties are tried together. But cases arise where the defenses of the different parties are antagonistic, or where evidence will be

introduced against one which will not be admissible against others. Where from the nature of the case it appears that a joint trial will probably be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested." The discretion of the court is necessarily exercised before the trial begins, and with reference to the situation as it then appears; and the phrase "prejudicial to the rights of the parties," means something more than that a joint trial will probably be less advantageous to the accused than separate trials. The controlling question is whether it appears that a joint trial will probably result in substantial injustice. It is not necessarily a ground for granting a separate trial that evidence will be admissible against one of the accused which is not admissible against another. Such evidence is received and its limited application pointed out to the jury, in most cases where two or more accused persons are tried together. When the existence of such evidence is relied on as a ground for a motion for separate trials, the character of the evidence and its effect upon the defense intended to be made should be stated, so that the court may be in a position to determine the probability of substantial injustice being done to the moving party from a joint trial. It does not appear from the record that the trial court was so advised in this case, and on that ground alone it is impossible to say that the court abused its discretion in denying Vetere's motion.

Ordinarily the fact that one of the accused has made a confession incriminating the other, would be a good ground for granting a separate trial. But the peculiarity of this case was that each of the accused had made a full written confession of facts which, if legally corroborated, was sufficient to convict either one of them of murder in the first degree. It follows that no

material fact incriminating either one of the accused came to the knowledge of the jury because they were tried together, which would not also have come to the knowledge of a jury if each had been separately tried and his own confession admitted against him. This being so, the claim that substantial injustice was done by a joint trial relates rather to the corroborative effect which each of these confessions may be supposed to have had upon the other; and if we assume that the trial court did know all the facts before the trial began, the question presented to it was whether it would order separate trials of two self-confessed conspirators, each of whose acts and declarations, made or done in pursuance of the conspiracy, was admissible against the other, because their respective confessions, being made after the event, were not so admissible. The mere statement of this proposition shows that the question was one fairly within the limits of judicial discretion, and that a denial of Vetere's motion for a separate trial was not an abuse of discretion. In view of the precautions taken in the admission of evidence and again in the charge of the court, we cannot assume that the jury were improperly influenced by any corroborative effect given to evidence not admissible against one of the accused but admitted as against the other only. It may be observed that our attention has been called to but two cases in this country where the action of a trial court in refusing to grant separate trials to persons jointly indicted has been held to be reversible error. In one of them the right to a separate trial was granted by statute, and in the other the effect of the joint trial was to deprive the accused of the benefit of material testimony, under the common-law rule that persons jointly indicted and tried may not be called as witnesses for or against each other.

Generally speaking, the decision of a trial court upon

a preliminary and collateral question of fact will not be reversed unless in a case of clear and manifest error. In *State* v. *Willis*, 71 Conn. 293, 313, 41 Atl. 820, this rule was applied to, or quoted as applicable to, the determination of the voluntary character of extra-judicial confessions as affecting their admissibility in evidence; and we see no reason why it is not equally applicable to the determination of the probability or improbability of substantial injustice flowing from a joint trial of persons jointly indicted. If it were not so, there would be grave danger of mistrials from causes which were unknown to the trial court at the time when it was required to decide the question. Moreover, joint trials of persons jointly indicted are the rule, and separate trials the exception resting in the discretion of the court. For the reasons indicated, we are satisfied that in this case the court did not err in denying Vetere's motion for a separate trial, and that no substantial injustice has been suffered by either of the accused in consequence of their joint trial.

The assignments of error next in logical order are those relating to the admission of the several statements and confessions of the accused. Here again, the court had to deal with a preliminary issue, and upon the trial of that issue all of the statements and confessions were abundantly shown by the State to have been given voluntarily and without undue influence of any kind.

We will refer first to the assignments of error relating to this branch of the case pursued on the brief for Castelli. There was no error in admitting the general question addressed to the State's witnesses, whether any threats were made or inducements held out to procure the confessions. The issue was a preliminary one, tried to the court in the absence of the jury, and opportunity was given for cross-examination. Under

these circumstances the court might in its discretion shorten the direct-examination of witnesses by admitting leading questions and questions asking for conclusions of fact.

Exhibit 31 was an affidavit for the purpose of extradition, and the evidence of the officer Enright is, not only that Castelli, before signing it, read it over carefully and made a correction in it, but, on cross-examination, that the notary warned Castelli in writing that anything he signed might be used against him. Exhibit 39 is the detailed confession made by Castelli to the coroner of New Haven county, and it is prefaced by a written warning in the form approved by this court in State v. *Coffee*, 56 Conn. 399, 16 Atl. 151, and in State v. *Willis*, 71 Conn. 293, 308, 41 Atl. 820. Exhibit 28 is a paper written by Castelli admitting the killing and addressed to the coroner after Castelli had been taken to the door of the room where Vetere was, and had seen that Vetere was making a statement to the coroner. The witness DeMartini testified that Castelli asked for a piece of paper on which to write it. No doubt Castelli was influenced by what he had just seen and by the statement of DeMartini, which was true, that Vetere was telling the whole story; but as pointed out in State v. *Willis*, 71 Conn. 293, 41 Atl. 820, it is difficult to conceive of a confession which is not induced by a sense of self-interest. Moreover, this paper added no material fact to the case made by the State. Castelli made several statements on April 26th, and the State very properly offered all of them in evidence, but so far as the issue of guilt or innocence is concerned they were all merged in or superseded by the final confession, Exhibit 39, which was complete in itself. Exhibits 38 and 30 are statements made by Vetere incriminating Castelli. These were not admitted as against Castelli, and the jury were instructed not

to consider them as evidence against him. They were necessarily admissible as against Vetere, and the course which the court took was the only one possible. On their merits the assignments of error relating to these statements of Vetere go back to the denial of the motion for a separate trial, which has already been discussed.

In this connection we take up the alleged error of the court in admitting the story of Castelli's rehearsal of the murder scene at 260 Crown Street on May 3d. The claim is that Castelli was compelled to re-enact the murder and so compelled to give evidence against himself. This again was a preliminary issue and the court so treated it, ruling that the State must show that the actions of Castelli were voluntary. The State fully sustained the affirmative of that issue, but the objection is made that Castelli was not at that time warned that he could not be compelled to rehearse the murder, or that such rehearsal might be used against him. There is, however, no rule of law in this State which requires any such warning. The State must show affirmatively that any confession or performance in the nature of a confession was not procured by duress. The fact that a warning in the usual form has been given is generally accepted as satisfactory evidence that the confession was not procured by duress. But when the voluntary character of the confession is shown, either by proof of a warning or by any other satisfactory evidence, the law and the Constitution are satisfied. In this instance a warning had been given to Castelli the week before, and he had fully confessed after being warned. A week later he was asked, being deaf and dumb, to go to the scene of the crime and repeat the confession in pantomime, and upon the evidence he did so voluntarily. A second warning under such circumstances would have been superfluous.

Castelli testified when on the witness-stand that one of the officers at the police station in New York struck him many times with a piece of hose before his confession was written. This evidence was offered after the State had rested, and of course long after the preliminary issue as to the voluntary character of Castelli's confession had been tried and determined in favor of its admissibility. Under these circumstances the court properly instructed the jury that if they found that the accused were frightened or forced to make their confessions by the conduct or abuse of the officer having them in charge, they should disregard the statements entirely as of no value.

Referring now to the statements and confessions of Vetere: It is assigned as error that the court ruled that Vetere's confessions were voluntary. In support of these assignments of error it is said that Vetere was allowed to see Castelli in the act of making a statement to the coroner, that the two were kept apart and not allowed to communicate with each other, that Vetere was not given anything to eat from 7:30 P. M., when he was brought into the police headquarters, until 11:00 P. M., that his examination was protracted until 3:00 A. M., and that the attempted proof of the voluntary character of his statements failed, because of the generality of the questions asked of the State's witnesses.

Most of these matters have already been sufficiently discussed. The length of time occupied in these examinations by the coroner is accounted for in part by the fact that he took the statements of Castelli and Vetere separately, partly by the mode of communication adopted, which was by writing out the questions and then handing the paper to the accused for him to write his answer, and partly by the fact that Vetere was taken out to supper. As to the alleged deprivation

of food, it appears that up to the time when Vetere complained that he was hungry he had made no incriminating statement, that he offered to make a statement in writing, that the coroner wrote out the customary warning, and Vetere wrote in reply: "I want to get food as I nearly choked to death and I got awful headache. I am uneasy without food and if I get food I would be excited to write and tell all the truth." He was immediately taken out to supper, and wrote nothing in the nature of a confession until after he came back. This being so, it cannot be said that his confession was in any degree extorted by starvation. On the contrary, the coroner was careful that no confession should be made until after Vetere's hunger had been satisfied.

It is also assigned as error that the confessions of the accused were admitted as exhibits and allowed to go to the jury-room, the alleged wrong being that undue prominence was thus given to the most damaging portions of the testimony. There was no error in this. Writings made or subscribed by the accused are ordinarily admitted as exhibits. If these writings were harmful it was not because any rule of procedure was violated, but because the accused had furnished harmful evidence against themselves.

We take up next the assignments of error in the admission of evidence. DeMartini testified that he wrote on a piece of paper that Vetere was telling all and showed it to Castelli, who wrote back on a piece of paper, "Me afraid of chair; tell all." This testimony was objected to on the ground that the papers themselves must be produced; and to prove their loss the Assistant State's Attorney was allowed to state to the court that he had been through every scrap of paper the State had and could not find them. The testimony was then admitted. There was no error. The evi-

dence of loss was sufficient to support the admission of secondary evidence, especially as the statement itself was of little importance because followed by a full written confession.

As to the admission of the summons in the suit for nonsupport brought by Annie against Castelli, the objection that it tended to prove a different offense from that with which Castelli was charged, was properly overruled. The paper was admissible, being taken from Castelli's person, as tending to show that Castelli had reason to believe that his wife had complained to the police against him in respect of the matter described in the summons. The probation card, also taken from him, and the testimony of Enright explaining it, were admissible on the same ground, and the exemplified copy of the record of the New York court in the nonsupport proceedings was directly admissible to show the relations between Castelli and his wife.

Vetere's assignments of errors numbers 8 and 9 are not well founded in the record. The claim is that DeMartini was permitted to testify to a conversation carried on in writing, without producing the writings; but the record is that the witness was asked whether any threats or inducements were made to Vetere in writing or otherwise, and that he answered "no."

The court in charging the jury with reference to the statements or confessions made by the accused, used the phrase "they are only admissible as evidence affecting the one who made them"; and this is claimed as error, because in *State* v. *Willis*, 71 Conn. 293, 306, 41 Atl. 820, we said that such statements were not "testimony," but facts to be proved by testimony. The distinction drawn in *State* v. *Willis* is quite correct, and that distinction was carefully observed by the trial court not only in other parts of the charge but also in the lan-

guage complained of. The declarations of the accused inconsistent with their respective pleas of not guilty, were not testimony, but when proved they were "evidence affecting the one who made them," in the same sense that any other relevant fact inconsistent with the claims of an accused is evidence affecting him.

On one occasion the court in its charge used the phrase "considerable doubt" instead of "reasonable doubt," but it could not be supposed by the jury that the court intended to mean anything more or less than that reasonable doubt which it had been at great pains to explain and expound to them at great length.

The claim that the court unfavorably commented on evidence seems to us without foundation. It is true that the court apparently failed to remember Castelli's claim that he had bought his ticket for New Haven because he had seen Annie and Vetere talking about going to New Haven; but such a slip as that, in commenting on the evidence after a long trial, is not reversible error. In the first place, it is the duty of the jury, not of the court, to remember the evidence correctly, and in the second place the trial judge was very careful to so inform the jury, and to tell them that he might be mistaken in his recollection of the evidence, and that they must take the evidence not from him but from the witnesses. The court did not err in refusing to charge as requested by Castelli upon the subject of reasonable doubt. The charge of the court upon that point was correct and sufficient, and the court is not bound to use the phraseology of counsel in preference to its own, in stating familiar propositions of law to the jury.

The court did not err in charging the jury that in order to reduce Castelli's crime from murder to manslaughter, the homicide must have taken place under circumstances which would justify a reasonable belief

that adultery was being committed. That is the rule expressed in *State* v. *Yanz*, 74 Conn. 177, 50 Atl. 37, and *State* v. *Saxon*, 87 Conn. 15, 86 Atl. 590. It was too favorable to Castelli. A husband who, on his own story, suspects that adultery is going to be committed, follows his wife and her suspected paramour from New York to New Haven, conceals himself in a closet armed with a deadly weapon waiting for the expected provocation to materialize, and then kills his wife, cannot claim the benefit of the rule in *State* v. *Yanz*.

As to Vetere's assignments of errors, numbers 39–41, the court correctly charged the jury that Vetere could not be convicted on Castelli's unsupported testimony. This was all that the case called for. Castelli was not a witness for the State. He could not, while jointly indicted, have been compelled to testify. But since he chose to testify in his own defense, his admissible testimony was relevant, though not that of a full witness, so far as it tended to prove or disprove the existence of the conspiracy outlined in Vetere's confession.

We have disposed of all the assignments of error pursued on the briefs, except those relating to the denials of the motions to set the verdicts aside on the ground that they were against the evidence. These motions were properly denied. The rule laid down in *State* v. *Willis*, 71 Conn. 293, 41 Atl. 820, is that an uncorroborated extra-judicial confession will not support a conviction of murder in the first degree. But these confessions were abundantly corroborated. The identity of the victim, and her death from the injuries inflicted by Castelli, are established without resorting to the confessions. Castelli's testimony at the trial, admitting the killing and pleading provocation, left only the degree of the crime to be determined by the jury. Was it a wilful, deliberate and premeditated killing, as his confession

admitted, or was it the result of a sudden outburst of uncontrollable fury caused by the sight of his wife in Vetere's arms? The jury could give but one answer to that question; for Castelli himself testified that he concealed himself in the closet armed with a deadly weapon, to await the return of Vetere and his wife; and upon what little testimony was given on the trial as to the situation of the parties, it seems that Vetere was standing by the window at some distance from Annie when she was struck.

Vetere, also, admitted on the witness-stand that he was present at the killing. His testimony amounted to a judicial confession that he was an accessory after the fact, and the only question left for the jury was whether he was an accessory after the fact, in which case he was not guilty of any crime of which he stood indicted, or whether he was a principal under our statute as indicated by his confession to the coroner. All the physical facts were admitted. The determining question was whether the elopement with Annie was a genuine affair of the affections, as Vetere claimed in his testimony, or whether it was a pretense contrived to bring the victim to her place of execution, as Vetere admitted to the coroner.

No reasonable explanation consistent with the theory of a genuine elopement can be given of Vetere's own testimony as to what took place at and after the killing. The crucial scene is hurried over in a few words. He says that he kissed Annie; that she wanted to take a nap in the chair; that he went over to the window seat; that he heard and saw nothing until he looked around and saw Castelli standing beside his wife. Annie was then sitting with a drooping head, and Castelli, pointing to the door, said, "Killed, finished," and then "hurry up." Apparently no further communication passed between them until they reached

the train. Could there be stronger corroboration of the confession to the coroner than is unconsciously furnished by Vetere's testimony? Not an indication of surprise, sorrow, anger, or desire for retributive justice; but on the contrary, instant acquiescence, a partition of Annie's jewelry and money, a joint flight from the scene of the crime without stopping to see whether Annie was really dead, and a common attempt to conceal the crime by writing a postal card addressed to Castelli intended to account for Annie's disappearance, and by appearing together at a social entertainment that same evening.

The fact that Vetere left Annie alone in the restaurant at the time when, according to his confession, he met Castelli and told him of the location of the room, and how to open the front door, was also proved. Without going further into details, it seems evident that the motions to set aside the verdicts were properly denied.

There is no error in either appeal.

In this opinion PRENTICE, C. J., RORABACK and SHUMWAY, Js., concurred.

WHEELER, J. (dissenting). One ground of error in Vetere's appeal, and one in Castelli's, in my judgment, entitles each to a new trial. Vetere seasonably moved for a separate trial. The granting of such a motion is ordinarily a matter of discretion. But if the defenses of the accused are antagonistic, or the evidence to be introduced against one is not admissible against the other, separate trials may be ordered.

Where a joint trial will probably be prejudicial to one or more of the accused the motion should be granted. *State* v. *Brauneis*, 84 Conn. 222, 226, 79 Atl. 70.

I agree with the majority opinion, that the mere fact that evidence will be admissible against one accused which will not be admissible against another, will not necessarily furnish a ground for granting a separate trial; for the court, by limiting its admission and pointing out to the jury at the time of its admission and in its charge the precise use to be made of the testimony, may make it reasonably certain that the jury did not reach its conclusions by the improper use of this evidence. So that in a given case the test for the trial court is, will the joint trial probably result in substantial injustice, that is, will the jury be unable to separate the evidence and be likely to use the evidence admissible against one accused, against another against whom it is not admissible?

1. I agree with the majority, that the ground of the motion for a separate trial should develop the existence and effect of such evidence, so that the court will be placed in a position to determine the probability that substantial injustice will be done to the moving party. The majority hold that "it does not appear from the record that the trial court was so advised in this case." I think this conclusion does not accord with the facts of record. At the beginning of the trial Mr. Hoyt, counsel for Vetere, thus addressed the court: "Before we proceed to draw the jurors, I should like to make a motion in this case. I should like to make a motion that the accused be tried separately, first, upon the ground that there is evidence in this case, as is apparent from the coroner's finding and notes, which is admissible against one and not admissible against the other, in the nature of statements and other evidence decidedly of a character that is not admissible against both. As I understand the law in *State* v. *Brauneis* in the 84th Conn., it is of course a matter of discretion for the court. Our Supreme Court has said that where

it would be prejudicial to the interests of the accused to try them together, then they should be tried separately. Now, I therefore move that they be tried separately, on behalf of Vetere at least." Replying, the State's Attorney conceded that the two accused "did make separate statements in writing . . . and other statements by signs to the authorities in New York during the coroner's inquest." Mr. Hoyt replied: "I cannot add anything, your Honor, to what I have already said, except this: the State's Attorney has suggested that in the event of admissions or conversations of one being admitted which would not be admissible against the other, that the caution of the court would take care of it. Now, it does not seem to me that while your Honor in the caution is doing everything you can do to prevent it being used against the other man, it certainly does get to the ears of the jury, and it is pretty hard for any human being to dismiss that from their minds; provided of course such statements are admissible." The ruling of the court upon the motion shows that it fully appreciated the ground of the motion, viz.: to prevent the State introducing statements and evidence which were admissible against one accused and not against the other.

The State's Attorney has argued this point as wholly within the discretion of the court. He has not claimed that the trial court was not apprised of the ground of the motion or the character of the evidence to be offered. Mr. Hoyt expressly called the court's attention to the coroner's finding and notes, and we may assume that the court—a learned and experienced judge, and for a long period a distinguished State's Attorney—had these before it. The court then knew that there were different statements in the nature of written confessions and oral statements claimed by the State to have been made by these accused, some of which might be

admissible against one accused and not against the other, and others of which might be admissible against one and not against the other; and the court knew that the State intended to offer evidence that Castelli had been taken to the scene of the tragedy and had there re-enacted all that was done by him and by Vetere at and about the time of the killing.

I have never known a case where it was more apparent at the inception of the trial that it would probably be difficult, if not impossible, to disassociate the evidence thus offered against one accused from the evidence offered against the other. It was the duty of the court when this condition appeared, to grant separate trials to these accused.

Upon an examination of the evidence it appears that during its taking, in at least twenty-one instances, the court instructed the jury that certain evidence admitted was admissible against Castelli and not against Vetere, and in at least ten instances the court instructed the jury that certain evidence admitted was admissible against Vetere and not against Castelli. And these were not the only occasions when such instruction would have been pertinent.

The amended finding recites: "1. Upon the trial much evidence was admitted against the defendant, Joseph Castelli, only. This was done against the objection of counsel for the defendant Frank Vetere, made upon the ground that such evidence was prejudicial to the defendant, Frank Vetere, and that the mere fact that such evidence was admitted only against the defendant Joseph Castelli, did not properly protect the defendant Frank Vetere's rights, because the jury having heard such evidence and considered it against the defendant Joseph Castelli, would be unable wholly to dismiss it from their minds in a consideration of the evidence against the defendant Frank Vetere."

The court states that under its ruling about half of the 596 pages of the printed testimony was admitted. The finding further states: "The substance of this evidence which is claimed to have been harmful to the defendant Frank Vetere, is as follows: 'That the defendant Joseph Castelli had killed his wife, of whose murder he and the defendant Frank Vetere were jointly charged, because he was mad at her for telling the deaf people about him, and because she had given him a disease. . . . That he had admitted this was the reason. That said Joseph Castelli had treated his wife very badly, and had been arrested at her instigation for nonsupport and had been sent to the workhouse as a result thereof. That Joseph Castelli had struck his wife on occasions. That said Joseph Castelli had been taken by the police authorities of New Haven over the route the State claimed was taken by him in going to the scene of the crime, and that he had acted out the tragedy by showing how he struck his wife from behind on the head several times with an instrument. That thereupon he and the defendant Frank Vetere left the scene of the crime together and went to New York together. That the defendant Joseph Castelli had stated that he had planned to have Frank Vetere take Joseph Castelli's wife to New Haven on the day of the killing, and that he told defendant Frank Vetere that he was going to kill her at that place, and had told Frank Vetere to find a room in New Haven where the killing could be accomplished, and that defendant Frank Vetere came to him while his wife was at dinner and gave him the key to the room so that he could get into it, and that after Joseph Castelli had killed his wife, he took all her money and jewelry and he and Frank Vetere went to New York together, and that on the way there he gave the jewelry to defendant Frank Vetere. That said defendant

The State *v.* Castelli.

Joseph Castelli had stated that he had paid for Frank
Vetere's ticket to New Haven on the day of the killing
and also for the meal Frank Vetere had with Joseph
Castelli's wife in New Haven, and that defendant
Frank Vetere wrote Exhibit 40, which is made a part
of this finding, at the direction of said Joseph Castelli,
addressing the postal to Joseph Castelli and signing
it as coming from Joseph Castelli's wife.'"

All of this evidence was vitally prejudicial to Vetere,
and it is unreasonable to expect that the jury could
have heard this evidence and kept it wholly separate.
No matter how carefully the trial court cautioned the
jury as to its duty to do this, the jury could not have
kept wholly separated in its mind the evidence admis-
sible solely against Castelli, and that solely against
Vetere. It could not do it because the human mind
cannot even read this record and do it, and the printed
page is cold and dull compared with the same testi-
mony given in open court. I think the record shows
that the court was fully advised, preceding and during
the trial, of the nature and character of this evidence,
and was in a position to determine that substantial
injustice would be done to Vetere on a joint trial.

The majority opinion concedes that "ordinarily the
fact that one of the accused has made a confession in-
criminating the other would be a good ground for
granting a separate trial." But it excludes Vetere
from the benefit of this rule because "each of the ac-
cused had made a full written confession of facts which,
if legally corroborated, was sufficient to convict either
one of them of murder in the first degree. It follows
that no material fact incriminating either one of the
accused came to the knowledge of the jury because
they were tried together, which would not also have
come to the knowledge of a jury if each had been sep-
arately tried and his own confession admitted against

him." If this means that because each confession covered the same facts it was immaterial if both were received in evidence, since the jury had before it the admissible confession which, if corroborated, was sufficient to convict, it would seem to assume that the jury found the admissible confession proven and corroborated without reference to the inadmissible confession. Unfortunately, we cannot know what the jury found proven, and we cannot tell what part the inadmissible confessions played in helping them reach their conclusion. The evidence of this character excepted to not only covered written confessions, but written statements of facts and acts, and a pantomine of the entire tragedy. It cannot be found that all of this inadmissible evidence was contained in Vetere's confession, nor can it be found that his confession was not illustrated, explained and corroborated by this inadmissible evidence, some of it intensive in kind and dramatic in quality.

The logic of this argument is somewhat disturbed as we read the questions asked Castelli by the coroner: "Didn't you make up your mind to kill her before that, and didn't you tell Frank Vetere that you were going to do it? No. Yes. Did you plan to have Frank Vetere take her to New Haven for you last Sunday? Yes, by me. Did Frank know that he was to take her to New Haven and you were to kill her there? Yes." And throughout the route which the coroner took Castelli over in enacting the pantomime of the killing and what preceded and followed it, the coroner constantly asked about Vetere, where he was, what he did and his part in the tragedy.

These references are simply illustrative of this entire record. How can it be said that its introduction was not prejudicial to Vetere?

Castelli did not move for a separate trial; he must be

held to have waived any prejudice to his rights from the joint trial.

2. Vetere and Castelli were taken in custody in New York, and while in custody but not under arrest, Coroner Mix of New Haven, on April 26th, took their statements in New York, first stating to them that he was the coroner for New Haven county, Connecticut, and engaged in inquiring as to the death of Annie Castelli; that he could not compel them to, and they were not obliged to, say anything about it, unless they wished to, and he inquired if they were willing to tell what they knew about it. Subsequently, by extradition proceedings, the accused were brought to New Haven and Castelli was taken, on May 3d, to the office of the coroner, who wrote on a piece of paper for Castelli: "I am going to take you the way you took when you came to New Haven and to Crown Street. Will you show me?" And Castelli nodded his assent, and shortly thereafter the coroner, with others, accompanied Castelli over the said route and questioned Castelli in detail as to what he and Vetere did, where they went, etc.; in short, he caused Castelli to enact the pantomime of the tragedy and what took place while they were in New Haven. All of this evidence was duly objected to and exceptions noted. The court found that Castelli did all of this voluntarily.

This is an instance where a *quasi*-judicial officer of the State procures an accused to incriminate himself without warning him that his acts and words would be used against him. It cannot in fairness be held that the caution given by Coroner Mix in the police station in New York, about his giving his statement, must have been in the mind of this deaf and dumb man when, seven days after, the coroner, in New Haven, said to him: "I am going to take you the way you took when you came to New Haven and Crown

Street." He was then entitled to a warning that he did not need to enact the tragedy of his crime in order to furnish the State evidence of his guilt. A statement made to a coroner by an accused under arrest, without a warning from him that he need not make it, cannot be held to be legally voluntary. So acts, conduct and statements explanatory thereof, made at the solicitation, persuasion, or command of a coroner, cannot be held to be legally voluntary if made without such warning. The only evidence before the trial court as to the voluntary character of this evidence was the statement that no promises or inducements were held out to Castelli to do or say what he then did. This evidence, I think, procured by the coroner without warning, was insufficient and inadmissible because in derogation of our rule as to involuntary confessions. It was a violation of the rights guaranteed to Castelli by Article First of our Constitution.