### STATE *vs.* LUCIANO IMUNDI, alias.

#### JUNE 18, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)  Criminal Law.  Self Defence.  Murder.*

On an indictment charging murder charge of the court that "a man attacked in his own home may not and is not obliged to retreat but he may not repel the attack and kill his assailant unless the circumstances render it necessary for his own protection; the law relating to a man attacked in his own home follows substantially the law as to a man attacked upon a highway, but he may not take human life unless he reasonably believes it is necessary for his own protection that he so do," following a charge as to the amount of force which a person when attacked, was justified in using.
*Held,* no error.

*(2)  Criminal Law.  Manslaughter.*

Charge of the court on an indictment for murder, that "if one found his wife in adultery and through heat of passion brought about by that state of affairs, he fired and killed, at the most it was manslaughter," correctly stated the law.

*(3)*   *Criminal Law.   Manslaughter.*

The mere fact of finding a wife in adultery does not reduce the act of killing the other guilty party by the husband to manslaughter, if the killing was not the result of sudden passion but the result of a preconceived plan to kill his wife and her paramour providing he could detect them in adultery.

*(4)*   *Criminal Law.   Trial.   Attitude of Court.*

Exception to the attitude of the court and in regard to his mannerisms and delivery of the charge cannot be considered where nothing appears in the record regarding it and no affidavits have been filed.

*(5)*   *Criminal Law.   Requests to Charge.*

The reading of an unreasonably large number of requests to charge to the jury tends to confuse the minds of the jurors by interfering with the orderly and logical presentation of the issues and the legal principles involved.

*(6)*   *Criminal Law.   Requests to charge.*

Requests to charge which in effect requested the court to direct the attention of the jury to portions of the evidence favorable to defendant and others which had been fully covered by the charge were properly denied.

INDICTMENT charging murder. Heard on exceptions of defendant and exceptions overruled.

RATHBUN, J. The defendant was tried in the Superior Court on an indictment charging him with murdering his wife. The jury returned a verdict of guilty of murder in the second degree. The case is before us on the defendant's exceptions taken in the course of the trial.

At the time of the killing the defendant was living with his wife in the city of Providence in a tenement not far from the Charles Street Roundhouse, where he was employed during the night time as a locomotive fireman. On the night of the killing the defendant reported at his place of employment at about eleven o'clock and worked until about midnight at which time he returned to his home for the purpose, as he contends, of obtaining refreshments. Before leaving the place of employment he placed a loaded revolver in one of his pockets. After reaching his home the defendant discovered his wife and Antonio Colandono together in a bed and apparently in the act of committing adultery. The defendant shot and killed both his wife and Colandono. The body of the wife, and also that of Colandono, was found

on the floor of the bedroom. Colandono's shirt was rolled up under his arms and his trousers were down below his knees. The defendant contends that in shooting he acted in self-defense; that Colandono rushed out of the bedroom door, pushed the defendant against a refrigerator and was raising a chair to strike him when the defendant fired. After the killing the defendant went out of the house, located police officers and brought them to his home. Several officers testified relative to statements which it is alleged the defendant made concerning the shooting. The testimony of the other officers on this phase of the case was substantially the same as that of Captain Monahan, who testified as follows: "55. Q. What was that conversation, Captain? A. I warned this man of his rights and in the presence of Sergeant Steves, Officers Franklin, Moran, Mulvey and Cunningham, I asked him if he shot these two people and he said that he did. I asked him why he did that and he explained to me that his wife worked for the American Silk Spinning Company in the daytime and he worked at night and he cleaned up the house every day and he left the house clean when she came home at night. In fact, he was there when she came. He said, 'I found cigarette butts when I come home in the morning which made me suspicious that some one was coming there.' He said, 'I went out of my house one night going to work and I saw this young man.' He called him by some name, I can't remember just what it was and indicated it was the dead man. 'Saw him when I was going out of my house, going to work and he ran away.' That was about two weeks before that time. He said, 'I put the gun in my pocket I had at home, I have carried it ever since and I have been up to the house expecting he would be there with my wife but I never found him there until last night. When I went in the room he sat up in bed and said, 'Don't shoot,' and that was all that he said or that was said, so he claims, and he fired two shots at him and one at his wife. I said to him, 'How is it you can shoot so well?' and he said, 'I am a good shot. I learned to shoot in the army.' "

The defendant contends that the trial justice erred in his charge to the jury relative to the law of self-defense. Said justice apparently forgetting for the moment that the killing occurred in the defendant's dwelling, charged the jury as follows: "When one is attacked by another under such circumstances as to lead him to apprehend peril to his life or great bodily harm, he may kill his assailant provided he cannot otherwise protect himself as by retreating from danger, by warding off the attack by a weapon, not deadly, by disabling his adversary without killing him, or any other way of preserving his own life and person. That is the law of self-defense and that is the common sense of it."

The defendant had requested the trial justice to charge, as follows: "Where one is assaulted in his own home, he is not obliged to retreat, but is justified in holding his ground and meeting force with force even though he could retreat with safety or escape with safety to other parts of the house." The trial justice corrected the above charge by charging the jury as follows: "a man attacked in his own home may not and is not obliged to retreat but he may not repel the attack and kill his assailant unless the circumstances render it necessary for his own protection." . . . Immediately after giving this instruction the court said: "The law relating to a man attacked in his own home follows substantially the law as to a man attacked upon a highway, but I say to you he may not take human life unless he reasonably believes it is necessary for his own protection that he so do. You may take the case."

The defendant's counsel argues that the language last quoted is not only inconsistent with the previous instruction that a man attacked in his own house is not obliged to retreat, but is in effect a repetition of an error which the court was attempting to correct. We do not think the jury could have so understood the charge. The court was evidently attempting to briefly state again the amount of force which a person, when attacked, is justified in using.

The defendant contends that a portion of the charge should be construed as an instruction that unless the killing was done in self-defense the defendant was guilty of murder and not manslaughter even although the killing was done in the heat of passion caused by finding his wife in the act of adultery. The language most seriously complained of is, as follows: "I don't care on the question of finding a man and woman in adultery as to what you would do, any one of you, it doesn't make any difference." It is clear that the justice was instructing the jury that it was their duty to decide the case on the law and the evidence and not on sympathy or prejudice. The statement next above quoted was ·made immediately after said justice, in addressing the jury, used the following language: "I want you to absolutely hold your minds free from any prejudice or sympathy. I don't want you to allow your minds to stray from the law applicable to this case. Counsel has asked you I think once or twice, 'What would you do under similar circumstances?' I don't recollect whether it was said 'What would you do if a man was approaching you with a chair?' or whether it was 'What would you do if you came into your house and found your wife in adultery with another man?' I don't know what you would do. If you did do something that you should not do then twelve men would be hearing the case, that is all." Said justice several times correctly stated the law relative to manslaughter, as applicable to this case. He used the following language: (2) "Now it is the law that if a man suddenly comes into a room or place and finds his wife in adultery and through heat of passion brought about by that state of affairs, he fires and kills, that, at the most is manslaughter and I so instruct you. At the most. But the defendant here has testified that he fired to protect himself against this action with the chair. Well, that is for you to consider. If you should find from the evidence in the case that the defendant rushed into that room, found his wife in adultery with this man, and in heat of that passion slew her, it would be manslaughter, not any

greater offence than manslaughter." . . . "So, if suddenly he came upon his wife and this other man in adultery, lost his head, became greatly excited and in the excitement of the moment shot to kill, you may find the defendant guilty of manslaugher. . . ."

The defendant excepted to the following language used by the court in discussing the defendant's contention that he shot in self-defense. " . . . you have got to decide in your own hearts whether he did what the police say he told them he did, that is, went there to catch this fellow and if he did, you have got one sort of a case on his own proposition of self defense and I have put in myself the question of homicide, and the question of manslaughter which doesn't fit into anything that has been said in this case but I give it to you as your right in determining the case." When the last language quoted was called to the attention of said justice he immediately corrected any erroneous impression, which may have been caused by said language, by charging as follows: "I want to withdraw that and put the question of manslaugher just as it is. If without reasonable grounds as I have read you the Rhode Island Supreme Court decision in this act in self defense this defendant used more force than was necessary, or a weapon more deadly than the circumstances called for and in that way brought about the death of another, you might under those circumstances, find the defendant guilty of manslaughter. So, if suddenly he came upon his wife and this other man in adultery, lost his head, became greatly excited and in the excitement of the moment shot to kill, you may find the defendant guilty of manslaughter and what I intended in the beginning and what I say to you now is that you must differentiate. If you find the last to be the fact, if you find that he did come into that house hurriedly and was surprised by finding his wife unexpectedly in that position, that is not in any manner related to the other circumstance because if you find he suspected his wife and went up there intending to shoot or kill any man that happened to be up there and did go up there and did so,

then you have the disposition and malice which you may make the basis of finding of murder in the first or second degrees. That is what I intended and want you to disregard what I said before in regard to manslaughter and take what I have just said as the law in relation to it." Thereupon the defendant excepted to the following language quoted above: "if you find he suspected his wife and went up there intending to shoot or kill any man that happened to be up there and did go up there and did so, then you have the disposition and malice which you may make the basis of finding of murder in the first or second degrees." The trial justice after using the above language almost immediately made the following statement to the jury: "Just try to decide what was done that night, whether it was in deliberation or whether it wasn't and then take my instructions in regard to what offense you may find if you find the defendant guilty of anything." The defendant's brief contains the following statement: "We deem it hardly necessary to cite authorities to sustain our contention that the mere fact (3) of finding a wife in adultery reduces the crime to manslaughter." If the killing was immediately after the discovery of his wife's unfaithfulness and was the result of sudden passion caused by the finding of his wife in adultery the crime would be manslaughter but the mere fact of finding a wife in adultery does not reduce the crime to manslaughter. If the killing was not the result of sudden passion but the result of a preconceived plan to kill his wife and her paramour providing he could detect them in adultery the crime would not be reduced to manslaughter. In *Shufflin* v. *People*, 62 N. Y. at 235, the court said: "It cannot be laid down as a rule of law that adultery gives a license to kill either of the offending parties without being guilty of murder." In *McNeill* v. *State*, 102 Ala. 121, the court said: "The law does not say, that under all circumstances a man is not guilty of murder if he kill his wife, even if in the act of adultery at the time of the killing. The test is, does the slayer slay by reason of passion aroused or induced by

revenge or malice?" . . . "If a man find his wife in the act of adultery, and, provoked by the wrong done him and moved by the passion naturally engendered, he immediately kills her, he is not guilty of murder, but of manslaughter only, but that, on the other hand, if he does not strike and kill until after there has been time for his passion to cool and for reason to reassert itself, or if he strikes and kills immediately, but is not moved thereto by the heat of passion but by prior malice, hatred, a desire to avenge the wrong done him, or by any other motive or upon any design whatever except such as is presently engendered by the paroxysm of rage into which he is thrown by this extreme provocation, he is guilty of murder." See also *State* v. *Castelli*, 92 Conn. 58, 101 Atl. 476; *State* v. *Agnesi*, 92 N. J. L. 53, affirmed in 92 N. J. L. 638, 104 Atl. 299; *People* v. *Garfalo*, 207 N. Y. 141.

The defendant took a general exception to the charge, as follows: "to the attitude of the Court throughout the charge which demonstrated both in mannerisms and delivery of the charge an unfavorable attitude toward the defendant. Also the stress that the Court has laid upon, and the favorable comment made by the Court upon the State's part of the case and no stress and hardly any comment made on the defense offered in this case."

(4) What the Court's attitude in "mannerisms and delivery" was does not appear: no affidavits have been filed. We are unable to say that the charge taken as a whole was unfair to the defendant.

At the trial the defendant's counsel presented to the trial justice, before the charge was delivered, thirty-two requests for instructions to the jury, many of which the trial justice refused to give. The defendant took forty-eight exceptions none of which are waived in this court. Some of the requests to charge are in effect requests that the trial justice direct the attention of the jury to portions of the evidence, favorable to defendant, to the extent of arguing the defendant's cause. Many exceptions were taken to the refusal of the

court to adopt the language of the request although the trial justice in his charge fully and clearly stated the legal principle involved in the request. The reading of an unreasonably large number of requests to the jury tends to confuse the minds of the jurors by interfering with the orderly and logical presentation of the issues and the legal principles involved. This court in *Faccenda* v. *R. I. Co.*, 43 R. I. 199 and in *Williams* v. *Allen*, 44 R. I. 14, 114 Atl. 138, expressed its disapproval of the unnecessary multiplication of requests for instructions because such procedure tends to create confusion and obscure the real issues. There is no necessity for considering each exception in detail.

(6)

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for sentence.

*Herbert L. Carpenter, Attorney General* for State. *Charles P. Sisson,* of counsel.

*Anthony V. Pettine,* for defendant.