## Court of Appeals.

*March* 1, 1887.

## PEOPLE v. O'SULLIVAN.

### RAPE—COMPLAINT—EVIDENCE.

It is a general rule of law that upon the trial of a defendant for one offense, it is improper to prove that he has committed other offenses, but it may be shown as bearing on the guilt of defendant that the defendant at a time not too far distant, made an attempt to commit the crime for which he is on trial.

It is competent to show that one charged with rape had a short time previously, made an unsuccessful attempt to commit this crime upon the complainant, and the evidence of this attempt may be given by the complainant herself.

The case of rape is an exception to the general rule that the evidence of a witness cannot be corroborated or confirmed by proof that the witness stated the facts testified to by him on the trial on some occasion when not under oath.

But where the disclosure of the crime by the victim of a rape is not recent or as soon as a suitable opportunity is furnished, the reason for receiving it in evidence does not exist, and the principle justifying its reception does not apply.

There may be circumstances which will excuse the delay of complainant in making a disclosure of the commission of rape, and the disclosure may be proved and all facts submitted to the jury for them to determine what weight should be given to the disclosure and what effect the delay shall have.

A disclosure of a rape made by the victim nearly eleven months after the commission of the crime, is too remote to be received in evidence.

APPEAL by the people from a judgment of the General Term of the Supreme Court in the Fourth Department of 13, November, 1886.

The defendant, John E. O'Sullivan, was tried at the Court of Oyer and Terminer of Onondaga county, Hon. GEO. N. KENNEDY, presiding, for the crime of rape, and was convicted and sentenced to eleven years imprisonment.

Upon appeal from this judgment the General Term of the Supreme Court in the Fourth Department reversed the judgment of conviction and ordered a new trial. . From this judgment of reversal the people appealed to the Court of Appeals.

The judgment of the General Term from which the appeal is taken states that the Supreme Court exercised its discretion, and refused a new trial upon the facts, and refused a new trial on the ground that the verdict was against the weight of the evidence and granted such new trial for errors of law only, and not for errors of fact or as a matter of discretion.

The indictment consists of two counts. The crime of rape is charged to have been committed by the defendant on Abbie O'Connor, at the town of Camillus, in Onondaga county, on the 6th day of May, 1884. In the first count the crime is charged and set forth in the usual common law form, with the addition of the statutory words of section 278 subdivision 3 of Penal Code: " The resistance of her, the said Abbie O'Connor, being then and there forcibly overcome by, him, the said John E. O'Sullivan." In the second count the crime is again described in the usual form of the common law with the addition of the statutory words of sub-division 4 of. the same section : " The resistance of her, the said Abbie O'Connor, being then and there prevented by fear of immediate and great bodily harm, which she, the said Abbie O'Connor, then and there had reasonable cause to believe would be inflicted upon her by him, the said John E. O'Sullivan."

John E. O'Sullivan was, in the year 1884, a priest of the Roman Catholic church. He was pastor of the church at the village of Camillus, seven miles from the city of Syracuse.

He lived in the parsonage, on the lot adjoining the church edifice. His age was about forty-five years ; he had been educated at various schools, both in this country and at Rome ; had been ordained a priest eleven years previous, and had been pastor of the Camillus church for about ten years.

Abbie O'Connor was, in 1884, a young girl about twenty years of age, residing with her foster-parents at Howlett Hill, near Camillus. She and her parents were members of, and regular attendants at the defendant's church. She had never been at service out of her own neighborhood. In January, of that year, she was attending school at Howlett Hill, near her home. On the twenty-fifth of January, upon the employment of the defendant, she went to his house, the parsonage, as his servant.

From that time forward, the family of defendant consisted of himself, Mrs. Doehner, who was the housekeeper, Timothy O'Sullivan, who was the man servant, and Abbie O'Connor. The house is situated on the main street in the village of Camillus, fronting southward. The entrance opens into a front hall, from which the stairway leads to the upper portion of the house. In the second story there is a large front room opening out of the hall, which was occupied by the defendant as a sleeping room ; another small room in front, opening out of the hall, was occupied by the housekeeper, Mrs. Doehner ; and a small hall bedroom adjoined the back end of the hall, and was occupied as a sleeping room by this young girl, Abbie O'Connor. Timothy O'Sullivan slept down stairs in the rear part of the house. In April Mrs. Doehner went to New York for medical treatment, and was gone ten weeks. During her absence the family consisted of three persons, the defendant, Timothy O'Sullivan and Abbie O'Connor. It was while the family was thus situated, and on or about the night of the sixth of May, 1884, when Abbie O'Connor was sleeping in her bedroom at the head of the

stairs, that, as complainant alleged, the defendant came to her room and the offense charged in this indictment was alleged to have been committed.

The testimony of complainant was as follows: She had retired and was sleeping; the defendant stole into her room and she was awakened by his presence; she was startled, and as she awoke she saw the form of the defendant at her bedside; he was feeling of the bedclothes; she rolled the bedclothing around her; he took her two arms and put them over her head; he held her two arms with one of his hands; he held her hands together with one of his hands over her head; he pulled the bedclothes away from her. She says: "I was screaming and I was asking him for God's sake to go away and leave me alone; I was trying to save myself; I was rolling myself up in the bedclothes and he wouldn't say anything all the while he was there." She made outcries, and she says; "I was turning and twisting and trying to get away from him, and he put the clothes over me; he choked me right here in the neck, and he put the clothes over my head, and I commenced to scream, and when I wouldn't keep still for him, he bit me right there in the arm." After he got up she went to raise the window and he came back and struck her on the shoulder, and says, "You little devil, if you don't go back there, and stay there, I will kill you." She did not in any way consent to this transaction.

The girl had been confirmed in the Roman Catholic church under the pastoral charge of this defendant and had never been to confession to any other priest; she had been from her childhood an attendant at his church; and after this occurrence she attended at his confessional upon three separate occasions. It was claimed by the people that he terrified her by threats and used the power, authority and influence of a priest and of the confessional to enforce her silence regarding this offence.

Mr. and Mrs. O'Connor, the foster parents of complainant, who lived at Howlett Hill, about four miles from defendant's

house, attended defendant's church at Camillus frequently, and Abbie sat in their pew Sundays during service, and it was their custom to visit Abbie after church, at the parsonage, defendant's residence. At such times defendant would be absent from his house, going to his mission at Jordan, ten miles distant. Abbie visited her adopted parents three times between May 6th, 1884, and August 21st, 1884.

The first public disclosure of this alleged occurrence was made by Abbie eighteen months after, on the 28th day of November, 1885, when she signed an affidavit charging defendant with rape.

She states that she first disclosed this matter to Father Moriarty (a Catholic priest at Syracuse) on the 28th day of March, 1885, more than ten months after the alleged occurrence.

On the 15th day of August (five or six days before Abbie left the defendant's house), as she alleged, he whipped her for prying into his correspondence. Abbie left defendant's house on the 20th August, 1884.

*Ceylon H. Lewis*, district attorney, for the people, appellant.

I. Evidence was received of the fact, that on the 28th day of March, 1885, the injured girl made a disclosure of the crime. She was permitted by the court to state the fact that she told Father Moriarty of the alleged outrage, but she was not permitted to detail the particulars of her disclosure. This was strictly within well settled rules of evidence in this class of cases. *Baccio* v. *People*, 41 N. Y. 269 ; *People* v. *Clemons*, 3 N. Y. Crim. Rep. 571 ; *Mallett* v. *People*, 3 Hawley, 379, and cases cited in note, where this evidence is fully discussed ; Wharton's Criminal Evidence, 273 ; 3 Greenleaf on Evidence, 213.

Exception was taken to this evidence because of remoteness of time, and because the woman did not speedily disclose the outrage which had been committed upon her.

In support of this exception the words of Sir Matthew Hale are invoked, that if she presently discovered the offense

it is an evidence to give greater probability to her testimony. 1 Hale's P. C., 633; 4 Blackstone's Com., 214.

But remoteness of time bears only on the question of fact, and it is to be considered by the jury in determining the effect of the evidence.

It has nowhere been determined that mere delay in disclosure operates to exclude the evidence or overthrow a conviction.

There is no inflexible rule respecting the time which elapses before complaint or disclosure of the attack upon her is made; and if she is prevented or restrained from making complaint, the effect is simply for the jury.

Mr. Chitty, in commenting on the language of Sir Matthew Hale above referred to, says: "But the rule respecting the time that elapses before the prosecutrix complains will not apply where there is good reason for the delay, as that she was under the control or influenced by the fear of her ravisher." 3 Chitty's Cr. Law, 812.

And to the same effect the law is laid down in 1 East's Pleas of the Crown, 445, 438, citing the case of *Rex* v. *Russen*, where the defendant was master of a charity school, and where the female assailed, one of his pupils, was deterred by his threats from making discovery of the outrage until three months after the offence was committed, and where the conviction was held good.

And in our own State, the Court of Appeals has laid down the same rule; *Higgins* v. *People*, 58 N. Y., 379; *Baccio* v. *People*, 41 N. Y., 266.

We may conclude, therefore, that the rule requiring immediate complaint is not inflexible. That if reasonable circumstances cause delay, the effect is simply for the jury; and their province as to the fact will not be invaded by the court. *State* v. *Byrne*, 47 Conn., 466; *State* v. *De Wolf*, 8 Conn., 99; *Mallet* v. *People*, 3 Hawley, 382; and cases cited in note.

In this case, the reasons for keeping the outrage a secret are apparent; she was terrified by his threats to do her both physical and spiritual harm if she revealed it. He was her

priest and spiritual father; she went to his confessional on three separate occasions when the subject of her ruin and its disclosure was brought up by him. He told her it was a sin to tell of an offense committed by a priest; that if she told she would go to hell and purgatory; he restrained her by the powers of his church and by his personal and spiritual influence; he obtained her a situation at Syracuse, and it was only on the occasion of her first meeting another confessor and priest of the Roman Catholic church, that her silence was broken and the wrong disclosed.

The whole subject was well left to the jury, with proper remarks as to her silence and its effect in the charge of the court.

(The points covered by the opinion of the court are omitted.)

*John C. Hunt.* for defendant, respondent.

1. Abbie O'Connor was permitted to state, under defendant's objection and exception, that she told of the transaction March 28, 1885, (more than ten months) after its alleged occurrence, to Father Moriarty, a Catholic priest, residing in the city of Syracuse, and officiating at St. John's church in that city.

The evidence on this point was :—

Q. *By Mr. Lewis*—" Who was the first party you told of this assault?" A. Father Moriarty. *Mr. Goodelle*—I object to that and ask that it be stricken out. *The Court*—That may stand. Defendant's counsel duly excepted on the ground that it is immaterial and incompetent, and as a reopening of their case. It is an assumption also. *The Court*—The question is, to whom she first told of this alleged assault. Do you object to the form of the question? *Mr. Goodelle*—Yes, sir. *The Court*—The form of the question will be subject to criticism. You may ask her if she told anybody, and if she answers in the affirmative, you may ask her who she told. *By Mr. Lewis*—Did you at any time tell any one of this transaction? Objected to by defendant's counsel as incompetent

and hearsay. Objection overruled. A. No, sir. Q. You don't understand my question. *By the Court*—Question.— After this transaction which you complain of on the part of Mr. O'Sullivan, did you tell anybody? Objected to by defendant's counsel as incompetent, especially the mentioning of the name of the defendant. That it is hearsay. Objection overruled; exception taken by defendant's counsel. *By the Court*—Question.—Did you tell anybody about this matter between you and Mr. O'Sullivan? A. No, sir; not until I told Father Moriarty. I told it to him. *By Mr. Lewis*—Whom did you then tell it to? Objected to by defendant's counsel as incompetent, especially mentioning the name of the defendant, and hearsay. Objection overruled; exception taken by defendant's counsel. A. Father Moriarty. Q. Who is Father Moriarty? A. The priest at St. John's church at the city of Syracuse. I told him on the 28th day of March, 1885. I went down there; it was while I was living at Mr. Dunn's. *Mr. Hunt*—We object now to the remoteness of the time and ask to have the testimony expunged. *The Court*—The request to expunge the testimony is denied. The remoteness of the time only bears upon the effect of the evidence to be considered by the jury. Exception. *By Mr. Lewis*—Was it the first time you was to confession to him (Moriarty) after coming to Syracuse, after leaving Father O'Sullivan's employ? Objected to by defendant's counsel on the same grounds as before. *The Court*—She said he was the first one to whom she confessed after leaving the defendant and that she then disclosed this transaction; that is all there is of it. *By Mr. Lewis*—It is only important as showing that that is the first opportunity she had. *The Court*—That may be fairly presumed, perhaps, from the evidence.

This was very unfair to the defendant, and greatly to his prejudice with the jury. No such presumption could for a moment be indulged in from the evidence. Abbie by her own testimony was away from any influence of the defendant from the 20th of August, 1884, up to March 28, 1885, and could have gone to any priest *ad interim*.

(Points covered by the opinion of the court are omitted.)

EARL, J.—The defendant was convicted, in the Onondaga Oyer and Terminer, of the crime of rape committed upon Abbie O'Connor on the 6th day of May, 1884. He was a Roman Catholic priest in charge of a church at Camillus in Onondaga county. The complainant was a domestic, working for him in the parsonage which adjoined the church. She testified that she was at the time of the alleged crime about seventeen years old; but there was other evidence, apparently more reliable, that she was about twenty. Before she went to live with him she resided with her foster parents, who brought her up from infancy, and she and they were members of, and regular attendants of, his church. She went into his service on the 25th day of January, 1884, and from that time forward, his family consisted of himself, Mrs. Doehner, his housekeeper, Timothy O'Sullivan, his man-servant, and the complainant.

She testified that the defendant entered her bedroom in the night time and there outraged her. At that time, the housekeeper was in New York and she was alone in the house with him and the man-servant. No criminal complaint was made against him until November, 1885, and he was not indicted until January, 1886.

Upon the trial, after the complainant had testified to the rape, she was permitted, against the defendant's objection, to testify that four days previously he had made an attempt to ravish her, that she resisted him and that he failed. For the reception of this evidence the court at general term, as appears by the opinion there pronounced and concurred in by a majority of the judges, reversed the conviction, holding that it was incompetent upon the trial of the defendant for the crime alleged to prove any other crime committed or attempted by him.

We do not agree with the learned general term in the view thus taken of this evidence. It is quite true that it is a general rule of law that upon the trial of a prisoner for one of-

fense, it is improper to prove that he has been guilty of other offenses; as, when a prisoner is put upon trial for larceny, or burglary, or murder, it is incompetent to prove that he has been guilty of other larcenies or burglaries or murders, or other crimes. In this case it would have been incompetent to prove that the defendant had committed or attempted to commit rape upon any other woman. But where a prisoner is tried for a particular crime, it is always competent to show upon the question of his guilt that he has made an attempt at some prior time, not too distant, to commit the same offense.

Upon the trial of a prisoner for murder it is competent to show that he has made previous threats or attempts to kill his victim. *People* v. *Jones*, 99 N. Y. 667; 3 N. Y. Crim. 260.

Upon the same principle, it must always be competent to show that one charged with rape had previously declared his intention to commit the offense, or had previously made an unsuccessful attempt to do so. In this case if witnesses other than the complainant could have been called who witnessed the unsuccessful attempt of the defendant to ravish. the complainant four days before the crime was in fact accomplished, no one would have questioned the competence of their evidence. And the evidence is not rendered incompetent because it comes from the complainant herself. It is not as valuable, or trustworthy, or important as if it had come from other witnesses. It probably did not have a very important bearing with the jury, because, unless they believed her evidence as to the principal offense, they would not believe her evidence as to the prior attempt. But it may have had some tendency to corroborate her story as to the principal offense, and thus may have had some weight with the jury. But whether it was important or not, there is no rule which condemns it and there is abundant authority to justify its reception. Whart. Crim. Ev. 35, 46, 49; *State* v. *Knapp*, 45 N. H. 156; *Strang* v. *People*, 24 Mich. 6; *Sharp* v. *State*, 15 Tex. App. 171; *Reg.* v. *Rearden*, 4 Frost. & Fin. 76; *Reg.* v. *Jones*, 4 Law Rep. N. S. 154; *Reg.* v. *Chambers*, 3 Cox, C. C. 92; *Williams* v. *State*, 8 Humph. 585; *State* v. *Walters*, 45 Iowa,

389; *Commonwealth* v. *Nichols,* 114 Mass. 285 ; *Commonwealth* v. *Lahey,* 14 Gray, 92 ; *Commonwealth* v. *Merriam* 14 Pick. 518; *State* v. *Marvin,* 35 N. H. 22: *State* v. *Wallace,* 9 N. H. 513 ; *State* v. *Way,* 5 Neb. 287 ; *Lawson* v. *State,* 20 Ala. 65.

We do not agree, therefore, that the judgment should have been reversed on account of the reception of the evidence alluded to. But there is at least one other error disclosed by the record, for which we think the conviction ought to have been reversed.

As before stated, the alleged rape was committed in defendant's house on the 6th day of May, 1884. The complainant remained in his service from that time until the 20th day of August following, without in any manner, by speech, action or appearance, disclosing or intimating to anyone that she had suffered this great wrong. During that time she visited her foster parents whose place of residence was not far distant from Camillus, and saw them nearly every Sunday at church and at defendant's house, having full and free communication with them in defendant's absence. When she left the service of the defendant it was apparently not on account of the crime that had been committed upon her, but because he whipped her for some trifling offense. Then she went home to live with her foster-parents and remained there until the 10th day of September, and then she went to Syracuse to work in a situation procured for her at her request by the defendant ; and while living there, on the 28th day of March, she disclosed to Father Moriarty, a Roman Catholic priest, at confessional, that the assault had been committed upon her ; and that was the first disclosure of the crime made by her to any person.

During all the time, from the 6th of May, to the 28th of March, nearly eleven months, there was not a day when she could not have made a disclosure to some one. She was at perfect liberty to leave the defendant's house at any time, and she remained there of her own free will and consent. The only excuse put forth for the great delay in making the disclosure is based upon the following facts : she testified that

after the assault upon her, she went voluntarily and without any solicitation of the defendant to his confessional and confessed to him while living with him, on three different occa sions ; and that on each occasion he asked her whether she had told anything about the assault upon her, and she replied : " No, Father ; " and he said " God bless you, my child."

She also testified that while she lived with him he told her it was a sin to " tell on a priest," and that if she ever " told on a priest she would go to hell or purgatory. She further testified that she did not go to confession again until the 28th day of March, 1885, when she made the disclosure to Father Moriarty, and that she told him about it the first time she went to his confessional.

It may well be that the fact that this disclosure was made at the confessional under the sanction of religion, gave it additional weight with the jury. But we are of opinion that such a disclosure, made nearly eleven months after the commission of the alleged assault, was too remote to be received in evidence. There was nothing whatever to justify the delay.

It is a general rule that the evidence of a witness can never be corroborated or confirmed by proof that the witness stated the same facts testified to in court on some occasion when not under oath. Such statements, like all hearsay evidence, are excluded as unsatisfactory and incompetent. But there is an exception to the rule in case of rape. The outrage in such a case upon a virtuous female is so great that there is a natural presumption that at the first suitable opportunity she would make disclosure of it ; and she would be so far discredited if she did not make the disclosure, for the purpose of confirming her evidence where she is a witness, such disclosure may be received. But where the disclosure is not recent, as soon as suitable opportunity is furnished, the reason for receiving it in evidence does not exist, and the principle justifying its reception does not apply.

In 1 Hale's Pleas the Crown, 632, it is said that " The complainant must make fresh discovery and pursuit of the

offense and offender ; otherwise, it carries a presumption that her suit is but malicious and feigned."

In 1 East's Pleas of the Crown, 445, it is said that the evidence of the complainant "is confirmed if she presently discovered the offense and made pursuit for the offender," and that "Her evidence is discredited if she concealed the injury for any considerable time after she had opportunity to complain." And the same language is substantially embodied in 4 Blackstone's Commentaries, 214.

In *Baccio* v. *People*, 41 N. Y. 265, the defendant was indicted for rape, and upon the trial the prosecution was permitted to give evidence that the complainant disclosed the crime to her mother twenty-four days after its commission ; and the conviction in that case was reversed, on the ground that the mother of the complainant was permitted to testify in detail on her direct examination to the statements made to her by the complainant of the time and manner of the offense. Judge WOODRUFF, writing the opinion, said :

" I was first inclined to say that evidence of any complaint made so long after the alleged injury, and especially when forced from the daughter, by the mother, after her daughter had once declared that her injury was due to a fall, should not have been received at all from any person ; the complaint was certainly not made recently after the alleged outrage. But in a case in which the fact of complaint is admissible, it is perhaps competent to explain the want of such early complaint, by facts which show that it was impracticable, or that it was prevented by circumstances consistent with the natural impulse to complain thereof, so far at least, as to destroy the presumption of falsehood derivable from concealment on the part of the female."

In the course of his opinion the same learned judge said that the rule admitting such declarations in case of rape is an exception to the general rule excluding declarations made out of court by a person who had been or might be examined as a witness, and is properly confined within narrow limits ; and he suggested that the reason for the admission of such

declarations is " that it is so natural as to be almost inevitable, that a female upon whom the crime has been committed will make immediate complaint thereof to her mother, or other confidential friend, and inasmuch as her failure to do so would be strong evidence that her affirmation on the subject, when examined as a witness, was false, that the prosecution may anticipate such a claim by affirmative proof that complaint was made."

In *Higgins* v. *People*, 58 N. Y. 377, the defendant was indicted for rape. In that case it appeared that the prosecutrix arrived in New York an entire stranger, and having lost her baggage she was inveigled into a basement on a pretense of finding it, where she was outraged. Upon coming out into the street she met a woman who asked her what was the matter, also a policemen who took her to a station-house. To neither of these did she state the real offense; but it appeared that as soon after arriving at the station house as her excitement would admit, she stated the facts to the police captain. Upon these facts defendant's counsel requested the court to charge that " If the jury believe the prosecuting witness did not make prompt disclosure of the alleged wrong, it is a circumstance against her, casting a great discredit on her testimony, and tends strongly to disprove the truth of the accusation." This the court refused to charge, and it was held that, conceding the proposition to be entirely accurate, it was an abstract one, as there was no ground for saying that the disclosure was not sufficiently prompt, and that it was not error, therefore, to refuse so to charge.

CHURCH, Ch. J., writing the opinion, said : " This proposition (which the court was requested to charge) is, doubtless, substantially correct, although it is quite general and somewhat vague. Any considerable delay on the part of a prosecutrix to make complaint of the outrage constituting the crime of rape is a circumstance of more or less weight, depending upon the other surrounding circumstances. There may be many reasons why a failure to make immediate or instant outcry should not discredit the witness. A want of

suitable opportunity, or fear may sometimes excuse or justify a delay. There can be no iron rule on the subject. The law expects and requires that it should be prompt; but there is, and can be, no particular time specified. The rule is founded upon the laws of human nature, which induce a female thus outraged to complain at the first opportunity. Such is the natural impulse of an honest female."

In Connecticut a more liberal rule as to disclosure made by a prosecutrix has been adopted than prevails in this State. *State* v. *De Wolf*, 8 Conn. 93 ; *State* v. *Byrne*, 47 Conn. 465.

There it may be proved, not only that she made disclosures of the crime, but the details of the crime as she disclosed them may also be proved. In the two cases cited the disclosures were made after a much longer time than in any other case which has come to our attention.

In the first case the complainant was deaf and dumb, and the disclosure was made more than a year after the commission of the crime. But there she was prevented from making the disclosure by the threats and the influence over her of the prisoner; and it was held that her mental and physical condition was such as to furnish her an excuse for not making an earlier disclosure.

In the other case the complainant did not made the disclosure until more than a year and a half after the commission of the crime. But, she was only twelve years old, and the defendant was her stepfather, and she was living in his family, and he threatened to take her life if she told her mother or anybody else what had happened. Under such circumstances it was held to be for the jury, in weighing her evidence, to determine what effect should be given to her failure to make an earlier disclosure.

It will be seen from these authorities that the very reason upon which the rule is based for the reception of such evidence, requires that the disclosure should be recent and made at the first suitable opportunity. But there may be circumstances which will excuse delay; as, when the prosecutrix is under the physical control of the defendant; when she is among

strangers and there is no one in whom she can confide, when she is induced to silence by threats and is so far within the power or reach of the defendant that the threats may be executed. In such and other like cases delay may be excused, and the disclosure may be proved and all the facts submitted to the jury for them to determine what weight shall be given to the disclosure and what effect the delay shall have.

But here there was absolutely nothing to justify the great delay. There was no time after the commission of the offense when she could not have left the defendant's house. She was of mature age and near her friends, and saw them frequently. She was in Syracuse having access to priests months before she made the disclosure. It did not appear from her evidence that she delayed the disclosure from fear of the defendant, or from any influence of superstition, or from the apprehension of the consequences to herself in this life or in the life to come.

We think the delay, under such circumstances, was so great and so unjustifiable that, as matter of law, the disclosure should have been excluded as evidence, and that it was therefore error to receive it. If this disclosure was competent, then no disclosure, however distant from the time of the offense, could be excluded; and all such disclosures would have to be received and submitted to the jurors for such damaging effect as they would allow them to have. A disclosure at such a distant time is of no more value in a case of rape than it would be in a case of robbery or murder, or any other crime. A disclosure in a case of rape has no legal value whatever, unless it is the natural result of the horror and sense of wrong which would prompt every virtuous female to make outcry at the first suitable opportunity.

Our attention has also been called to error in the charge of the learned trial judge. We have carefully considered the charge, and are constrained to believe that it was in part erroneous. But as we have reached the conclusion that for the error to which we have given particular attention the conviction was properly reversed, it is unnecessary to further notice

the charge, as the error complained of is not likely to be repeated upon the trial, if one should be had.

We therefore conclude that the judgment of the General Term should be affirmed.

All concur.

NOTE.—For a discussion of some interesting points of the law of rape and as to the declarations of the outraged female, see *People* v. *Clemons* ,3 N. Y., Crim. 565, and also *Peopie* v. *Bowles,* 3 N. Y. Crim. 447. In the latter case no complaint was made to anyone till a day or two after the rape, and the complainant was permitted to explain why she did not speak sooner.

A conviction of rape will not be set aside when the complainant, a girl of eleven, after giving her consent, withdrew it, and it was doubtful whether her withdrawal of consent was before or after penetration. *State* v. *McCaffrey,* 63 Iowa, 479.

One may be guilty of attempt to ravish a female who offers to consent to sexual intercourse for ten cents. *State* v. *Long,* 93 N. C. 542.

The complainant on a trial for rape testified that defendant had connection with her and when he was on her she felt his person in her, and a physician by whom complainant was examined found injuries on her person which such an act might have occasioned. *Held,* that there was positive proof of the highest character as to the commission of the crime, and also corroboration of the complaining witness, *People* v. *Crowley,* 4 N. Y. Crim. 168.

It is not error for the judge to charge on a trial for rape that while the defendant's evidence is to be considered as that of any other witness the jury would, in determining his credibility, consider the fact that he stands charged with the commission of a serious criminal offence. *Id.*

The defendant having testified as a witness it was proper to instruct the jury that they should weigh his testimony as that of any other witness, and consider his interest in the result of the case, his manner, and the probability or improbability of his testimony. *Anderson* v. *State,* 104 Ind. 467.

A conviction of rape commited by a father on his daughter eighteen years of age should be set aside where the complainant made no out-cry or complaint for several days, where there is evidence of ill-feeling sufficient to make plausible the defense that her story is false and where testimony was erroneously admitted to show that five days after the rape charged, the grounds bore marks of a struggle. *Lawson* v. *State,* 17 Tex. App. 292.

In a case of rape evidence of what the assaulted girl said about the rape the second day afterwards on being questioned by her mother is admisslble, *People* v. *Brown,* 53 Mich. 531.

In a trial for rape evidence of the condition of an under garment of the alleged injured female on the first evening and second morning after the alleged rape was properly admitted in evidence. The objection that the examination of the garment was too remote goes rather to the weight than to the competency of the evidence. *Grimmett* v. *State,* (Tex.) 2 S. W. Rep. 631.

Where under a charge of rape the defendant makes himself a witness and

admits all the material matters charged against him except the forcible and felonious character of the sexual intercourse, he thereby commits himself to a single theory in his defense, *i. e.* that there was sexual intercourse, and the court may properly instruct the jury accordingly.  *Anderson* v. *State*, 104 Ind. 467.

In a case of seduction under promise of marriage (and of course the same rule applies in cases of rape), the weight of evidence and the credit to be given to the complaining witness is a question exclusively for the jury and it is error for the trial judge to charge the jury, but they should consider any facts testified to by the complaining witness as established simply because she had testified to them and had not been contradicted.  " These facts which he directed the jury to regard as established were a part of the *res gestæ*.  The law presumed the respondent innocent of the crime charged until such presumption was rebutted and overcome by evidence; and the jury must weigh this presumption against her testimony and ascertain what the facts are.  Her testimony may be of such a character or so contradictory as not to obtain any credit with the jury."  *People* v. *DeFore*, (Mich.) 7 West. Rep. 886, 890; 31 N. W. Rep. 58

In a prosecution of an indictment for rape from the fact that after the occurrence defendant worked as usual on the place for several days, and for several months at a near neigabor's, the prosecuting witness making no complaint for five months nor until her pregnancy could no longer be concealed, defendant is entitled to the full benefit of the probative force of the facts and an instruction which deprives him thereof is erroneous.   *State* v. *Wilson,*. (Mo., March, 1887), 8 West. Rep. 617; 3 S. W. Rep., 870.

Upon a trial for rape the prosecution may show the results of a medical and surgical examination on the person of the prosecutrix made twelve days after the commission of the alleged offense.  *State* v. *Teipner,* (Minn. May 1887), 32 N. W. 678.

While upon a trial for rape evidence of the unchaste character of complainant is admissible, (*O'Blenis* v. *State*, 47 N. J. L., 279), such evidence is not given in justification, but to show probability of consent.  *Favors* v. *State*, 20 Tex. App. 281

In a trial for rape the defendant may show, as bearing on the character of the prosecutrix, that on the same day, a short time before the alleged rape, the prosecutrix said to one who had seen her in questionable relations with the defendant a few moments before, " that she had had sexual intercourse with the defendant, and would have it again, and did not care what other people might say."  *State* v. *Cook*, 65 Iowa, 560.