STATE OF CONNECTICUT *v.* JEFFREY T. SMITH

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 36580

Memorandum filed December 21, 1973

*Richard E. Maloney,* assistant state's attorney, for the state.

*William M. Shaughnessy, Jr.,* public defender, for the defendant.

BERDON, J. The jury found the defendant guilty of the crime of rape in the first degree in violation of § 53a-72 (a) (1) of the Penal Code, and of burglary in the third degree in violation of § 53a-103 of the Penal Code. The defendant moved to set the verdict aside, claiming it was contrary to law and against the evidence.

Briefly, the state offered evidence to prove and claimed to have proved the following facts: On the evening of July 17, 1973, the victim and a girl friend were staying at the girl friend's home in Simsbury. The parents of the girl friend were away on a trip. Sometime in the early morning hours on July 18, 1973, the defendant gained entry into the family residence by cutting the screen of the window of the den which was located on the ground level of the typical split-level home. Both girls at the time were asleep. The defendant, who at all times had a hood over his head, woke the girls separately and bound them with rope, cautioning them to remain silent. He put the girl friend in the bathroom located on the third level of the house. The defendant by threat, which placed the victim in fear of immediate physical injury, then proceeded to have intercourse with the victim. At no time was either girl able to see the face of the defendant. Both girls testified that they were able to identify the defendant through his voice. Both girls first met the defendant on July 4, 1973. Apparently, the girl friend was

on that day the date of the defendant, and the victim was the date of a friend of the defendant. On the fourth of July, both girls spent several hours with the defendant. On the Saturday and Monday before the occurrence, the girls again spent several hours with the defendant and his friend. In fact they were scheduled to have dinner with the defendant and his friend the evening of the day that the rape occurred. The identification of the defendant as the one who broke into the house and raped the victim was based upon the ability of the girls, independently, to recognize the voice of the intruder as that of the defendant.

The state further presented medical testimony from a doctor to establish that there was intercourse with the victim and also other evidence to corroborate the testimony of the victim.

The defendant first urges this court to set aside the verdict on the ground that each and every element of the crime of rape, including the identification of the defendant, must be corroborated and that there was insufficient corroborating evidence on the issue of identification.

Prior to the enactment of the Penal Code, which became effective on October 1, 1971, Connecticut did not require corroboration for conviction of a sex crime. Instead, Connecticut's rule was that in the absence of such corroborating evidence the court would take "a cautious approach and weigh the credibility of the complainant with care, particularly if there are improbabilities suggested by her story or there is substantial controverting evidence." *State* v. *Zimnaruk,* 128 Conn. 124, 126. Connecticut's rule was in accord with the great weight of authority. The rule recognized that such crimes are rarely committed in the presence of witnesses, and

it represented a sensible approach to a difficult problem. *State* v. *Chuchelow,* 131 Conn. 82, 83. The rule further recognized the plight of the accused and afforded him protection in such cases, where there is "ease of accusation and difficulty of disproof." *State* v. *Zimnaruk,* supra. The protection was further enhanced "by the judge's power to set aside a verdict upon insufficient evidence, and under this power verdicts are constantly set aside, in jurisdictions having no statutory rule, upon the same evidence which in other jurisdictions would be insufficient under the statutory rule requiring corroboration." 7 Wigmore, Evidence (3d Ed.) § 2061, p. 354.

With the adoption of the Penal Code came § 53a-68, which changed the law on corroboration and which is as follows: "Corroboration; exceptions. A person shall not be convicted of any offense under this part, or of an attempt to commit such offense, solely on the uncorroborated testimony of the alleged victim, except as hereinafter provided. Corroboration may be circumstantial. This section shall not apply to the offense of sexual contact in the third degree, nor to the offenses of prostitution, patronizing a prostitute, promoting prostitution or permitting prostitution." Although the statute by its terms does not limit the corroborating evidence to support a conviction under part 6 of the Penal Code (sex offenses), the Connecticut commission to revise the criminal statutes, in its comments on this section, stated: "[I]t is not meant to incorporate the New York rule that every element of the offense must be corroborated; rather, it was meant to require corroboration only of at least one element of the crime." Conn. Penal Code Comments (West) p. 28. This is an incredible comment in view of the fact that the wording of the statute is almost identical to and was obviously taken from § 130.15 of

the New York Penal Law as it then existed.[1] The New York case law on § 130.15 clearly provided that there be corroboration of the victim's testimony on each element of the sex crime. So, in the case of rape under New York law, the three elements of the crime—force or lack of consent, penetration and identity—had to be corroborated. *People* v. *Linzy,* 31 N.Y.2d 99; *People* v. *Page,* 162 N.Y. 272, 277.

Section 53a-68 of the Connecticut Penal Code is clear. With certain exceptions, a person shall not be convicted "solely on the uncorroborated testimony of the alleged victim." In the present case, this simply means that the victim's testimony must be corroborated as to every essential element of the crime of rape in the first degree, including the identity of the defendant. There is no ambiguity in this statute. Section 1-1 of the General Statutes provides that the words and phrases used in a statute "shall be construed according to the commonly approved usage of the language." It is clear that there can be no conviction solely on the uncorroborated testimony of the victim. The statute does not limit the corroboration to only one element of the crime. It therefore follows that all evidence given by the victim which is necessary to establish the essential elements of the crime of rape must be corroborated.

It may be that the commission in its drafting, and the legislature by its enactment of this legislation, intended to require corroboration only of one element of the crime, but they did not say this in § 53a-68. "In the construction of such a statute, the

---

[1] Section 130.15 of the New York Penal Law, prior to its amendment as of June 22, 1972, was as follows: "A person shall not be convicted of any offense defined in this article, or of an attempt to commit the same, *solely on the uncorroborated testimony of the alleged victim.* This section shall not apply to the offense of sexual abuse in the third degree." (Italics supplied.)

question is not what the legislature actually meant to say, but what is the meaning of what it did say." *State* v. *Penner,* 85 Conn. 481, 484; *State* v. *Parker,* 112 Conn. 39, 46; *State* v. *Moore,* 158 Conn. 461, 465; *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 471. This statute, being a part of the Penal Code, must be strictly construed for the benefit of the one accused of the crime. *State* v. *Parker,* supra.

The defendant in the instant case only questions the sufficiency of the evidence corroborating the element of identification. There is no question that the testimony of the victim on all of the other elements required for a conviction of rape in the first degree was corroborated. In this case, the victim testified that she was able to identify the defendant by his voice. The girl friend also independently identified the defendant. Certainly the girl friend's testimony is more than sufficient to satisfy the corroboration required under the statute. *People* v. *Masse,* 5 N.Y.2d 217; *People* v. *Downs,* 236 N.Y. 306; 2 Wharton, Criminal Evidence (13th Ed.) § 491. "[I]t should be noted that the corroborating evidence may be circumstantial only . . . . It need not be positive and direct and is sufficient if it affords proof of circumstances legitimately tending to show the existence of the material facts . . . ." *People* v. *Dow,* 34 App. Div. 224, 228, aff'd, 28 N.Y.2d 860.

The court also feels compelled to comment generally on this statute, § 53a-68, requiring corroboration for certain sex offenses. For the most part such a statute, degrading the testimony of a woman who claims to have been assaulted sexually, has no place in a modern penal code. It reflects an irrational belief in the dishonesty of a woman who has been sexually attacked. *People* v. *Linzy,* 31 N.Y.2d 99. By its very terms, it has a tendency to place great

reliance on the evidence which is corroborated, no matter how incredible it might be. "It is an immature jurisprudence that places reliance on corroboration, however unreliable the corroboration itself is, and rejects overwhelmingly reliable proof because it lacks corroboration, however slight and however technical even to the point of token satisfaction of the rule." *People* v. *Radunovic,* 21 N.Y.2d 186, 191 (concurring opinion). It is interesting to note that since the enactment of Connecticut's Penal Code, New·York has amended its statute on corroboration by drastically limiting its application. N.Y. Penal Law § 130.15, as amended by 1972 N.Y. Sess. Laws c. 373 § 1 (McKinney).

"The fact is that, in the light of modern psychology, this technical rule of corroboration seems but a crude and childish measure, if it be relied upon as an adequate means for determining the' credibility of the complaining witness in such charges. The problem of estimating the veracity of feminine testimony in complaints against masculine offenders is baffling enough to the experienced psychologist. This statutory rule is unfortunate in that it tends to produce reliance upon a rule of thumb. Better to inculcate the resort to an expert scientific analysis of the particular witness' mentality, as the true measure of the enlightment." 7 Wigmore, Evidence (3d Ed.) § 2061, p. 354.

The defendant next urges the court to adopt a rule that voice identification alone is insufficient as a matter of law to establish guilt beyond a reasonable doubt. To support his claim, the defendant cites *People* v. *Abelson,* 309 N.Y. 643, and *People* v. *Sher,* 8 Misc. 2d 359 (N.Y.), in which the courts found as a matter of law the voice identifications to be insufficient. Each of these cases was restricted to the particular facts of the case and did not pre-

tend to establish such a broad and sweeping rule as is urged upon this court. The cases cited by the defendant involved circumstances which made the voice identification uncertain.

Voice identification alone has been accepted by the courts from earliest times.[2] Its use, without the limitation urged by the defendant, is generally accepted by most jurisdictions, and the weight to be afforded to such evidence is a question of fact for the jury to determine. Note, 70 A.L.R.2d 995, 996, 1012. The generally accepted rule is as follows: "Testimony by a witness that he recognized the accused by voice is admissible, provided that witness has some basis for comparison of the accused's voice with the voice which he has identified as that of the accused. It is acceptable that the witness had acquired his knowledge of the accused's voice after the event to which he testifies, as well as before that time." Wharton, Criminal Evidence (13th Ed.) § 189; see *United States* v. *Moia,* 251 F.2d 255; 70 A.L.R.2d 996.

In the instant case, the basis for comparing the defendant's voice and the voice which the girls had identified at the time of the crime had been established. There was evidence that both the victim and her girl friend were in the company of the accused several times before the incident, and both had ample opportunity to become acquainted with his voice. Both girls testified that because of their familiarity with the defendant's voice they were able to identify the intruder's voice as that of the

[2] "England: 1660, Hulet's Trial, 5 How. St. Tr. 1185, 1187 (Counsel: 'Did you mark the proportion of his body, or his habit, what disguise he was in?'; Witness: 'He had a pair of freeze trunk breaches, and a vizor, with a grey beard.'; Defendant: 'I desire to know of him how he comes to know that I was there at that time?'; Witness: 'By your voice.') . . . ." Wigmore, Evidence (3d Ed.) § 660, p. 771 n.1.

defendant. The weight to be given to this voice recognition testimony was a question for the jury. Note, 70 A.L.R.2d 995, 1012. There was sufficient evidence for the jury to determine that the intruder was in fact the defendant.

The motion to set aside the verdict is denied.