STATE OF CONNECTICUT *v.* LEVAN P. JONAS

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and BARBER, Js.

Argued June 5—decision released September 16, 1975

*Edward F. Hennessey,* special public defender, for the appellant (defendant).

*Richard F. Banbury,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

MacDonald, J. The defendant was charged in a substituted information with one count of deviate sexual intercourse in the first degree,[1] in violation of § 53a-75 (a) (1) of the General Statutes; two counts, on separate occasions, of burglary in the second degree, in violation of § 53a-102; and one count of threatening, in violation of § 53a-62 (a) (1). Following a trial to the jury the defendant was convicted on all four counts and has appealed, assigning error in the denial, in part, of his motion to separate the offenses which occurred on different dates, in the denial of his motion to set aside the verdict, and in portions of the court's charge.

A survey of the preliminary statement of facts contained in the briefs under the new rules gov-

---

[1] In consideration for the victims of these crimes and because of the nature of the evidence produced, we will follow the practice adopted in *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81, and will not reveal the identity of the two women involved. Further, since no claim has been made that the conduct alleged to be deviate sexual intercourse, if proved, was not within the definition of that offense, the particulars of the act need not be discussed.

erning appeals in jury cases; see *State* v. *Crane,* 169 Conn. 242, 243 n.1, 362 A.2d 843; provides the following factual background for our discussion: On October 20, 1973, shortly before 5 a.m., Miss B was awakened by a noise and a light in the hallway of her apartment. She was the sole resident of an apartment in a large complex in a suburb of Hartford and the door to her apartment had been locked when she retired. A man wearing gloves, a dark overcoat and a ski mask over his face with a single opening for the eyes, and carrying a knife, entered the room, pulled down the covers on her bed and touched her. He stated that he already had killed one person and that he needed a place to hide from the police. He then asked that she perform an act of deviate sexual intercourse, in which request Miss B acquiesced, performing the act while the intruder held the knife in the vicinity of her neck. She later stated to the police that she had agreed so to act because of the knife and from fear for her safety. The intruder also took $10 from Miss B before he left her apartment. She attempted to remain calm during the incident and to act in a manner designed to gain his trust so as to enable her to observe him closely. As a result, she was able later to identify the defendant as the intruder by his voice and height in a pretrial lineup to which no objection has been addressed, selecting him from a panel of six men dressed in the manner indicated above. She again identified him at trial. The defendant had been a resident of the same apartment complex until October 19, 1973, the day preceding this incident, at which time he was evicted. Shortly after the incident, on November 2, 1973, the defendant was observed in the vicinity of the apartment complex and, upon

being alerted, police officials proceeded to that location where the defendant was observed coming from the building in which Miss B resided. He was observed by the police to walk to a car which was parked facing Miss B's apartment, and which, as confirmed by a check of the marker number, was the defendant's vehicle. The defendant was charged, as noted, with deviate sexual intercourse in the first degree and burglary in the second degree as a result of the incident of October 20, 1973.

On October 26, 1973, at the same apartment complex, Miss C, also a resident, received a call on her intercom, shortly after 1:15 a.m. A male voice stated that she had left her car's lights on in the garage. As she dressed to go to the car, the man called once again asking if she had heard the earlier message. She went to her car and discovered that the lights were off. She returned to the building and as she entered the elevator she was approached by a man wearing a ski mask. He stood blocking the door to the elevator and instructed her not to push any of the buttons, stating that he had placed a bomb beneath the elevator. Miss C was frightened when he pulled out what appeared to be a steak knife and told her that if she screamed, it would be her last scream. The masked intruder then asked her to turn around and she refused. He asked her name and, when she told him, he replied that he had the wrong person and left without further incident. Miss C viewed the same lineup as did Miss B, but without having had any indication as to Miss B's prior identification. She also selected the defendant from the lineup and later, at trial, again identified the defendant as the intruder, primarily on the basis of the appearance of his eyes.

The defendant originally was charged in nine counts, involving additional sexual offenses alleged to have taken place on November 3, 1973. Prior to trial he moved for severance of the offenses into three separate informations, each relating to the crimes charged on the three separate dates mentioned in the original information, and requested separate trials on each. The court severed the November 3, 1973 charges and left the remaining two charges, involving the Miss B and Miss C incidents of October, 1973, joined. The defendant has assigned error in the court's refusal to sever the counts relating to these two incidents.

Section 54-57 of the General Statutes and § 492 of the Practice Book provide: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." In construing the predecessor to § 54-57, we determined that the question of severance lay within the discretion of the trial court and that the exercise of that discretion cannot be interfered with unless it has been manifestly abused. *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154. In that case, we defined the test to be applied as follows (p. 240): "The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant. *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921; *State* v. *Castelli,* 92 Conn. 58, 63, 101 A. 476. The test is whether substantial injustice will result to the defendant if the charges are tried together. *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596." The

only example of substantial injustice given in *Silver* concerned evidence of such brutality by the defendant that would tend to arouse the passion of the jury to the extent of interference with a fair consideration of the evidence relating to other charges; we further observed (p. 241): "Such a situation, however, is rare . . . ." It was not found to exist in *Silver*, where indecent assaults on two young girls were tried in one information, and it does not exist in this case.

In *State* v. *Oliver*, 161 Conn. 348, 361, 288 A.2d 81, an additional prejudicial situation was discussed, that is, when crimes, near in time, place and circumstance, are so similar, although legally unconnected, that there is a danger that the jury will use evidence of one crime to convict the defendant of the other crime. Accordingly, our analysis must focus on the nature of the evidence produced at the trial. At the inception, it should be noted that the legislature previously had appended, as a necessary element of proof in sexual offenses, corroboration of the testimony of the alleged victim. General Statutes § 53a-68. Such evidence, the statute specifically stated, could be circumstantial.[2] It also should be noted that we have adhered to the general rule that evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. *State* v. *Holliday*, 159 Conn. 169, 172, 268 A.2d 368; *State* v. *Harris*, 147

[2] "[General Statutes] Sec. 53a-68. CORROBORATION; EXCEPTIONS. A person shall not be convicted of any offense under this part, or of an attempt to commit such offense, solely on the uncorroborated testimony of the alleged victim, except as hereinafter provided. Corroboration may be circumstantial. This section shall not apply to the offense of sexual contact in the third degree, nor to the offenses of prostitution, patronizing a prostitute, promoting prostitution or permitting prostitution."

Conn. 589, 599, 164 A.2d 399. However, in view of the corroboration requirement in such cases as this, there may be drawn an additional exception to the general rule cited in *Holliday*. If evidence, otherwise inadmissible upon trial of an offense of the type described in *Oliver*, tends to corroborate the testimony of the victim of a sexual offense to which § 53a-68 applies, such evidence, although inadmissible under the rationale of *Oliver*, may be admissible for the limited purpose of satisfying the corroboration requirement of § 53a-68.

Essentially, the defendant contends that the identification testimony of Miss C and Miss B, each standing alone, would not have resulted in his conviction and that, thus, the joint trial prejudiced him in this respect. If, under the analysis set forth above, it can be found that the testimony of each woman would have been admissible in separate trials of the different offenses it follows that no prejudice can come to the defendant from the joinder. Thus, we must view the counts relating to each woman independently and decide, first, whether, in an independent prosecution for the assault on Miss B, the testimony of Miss C would have been admissible. We find that such evidence would be independently admissible under the requirement of § 53a-68 as corroborative of the principal victim's account. As we recently stated in *State* v. *Marshall*, 166 Conn. 593, 600, 353 A.2d 756: " 'Evidence of the commission by the accused of crimes unconnected with that for which he is being tried when offered by the State in chief violates the rule of policy which forbids the State initially to attack the character of the accused, and also the rule that bad character may not be proved by particular acts and is therefore

inadmissible for that purpose. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 Atl. 649. But the inadmissibility of an evidential fact for one purpose does not render it inadmissible for some other purpose otherwise proper. 1 Wigmore, Evidence (2d Ed.) § 215. That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material. *State* v. *Chapman,* 103 Conn. 453, 481, 130 Atl. 899; *Commonwealth* v. *Robinson,* 146 Mass. 571, 16 N.E. 452; Underhill, Criminal Evidence (4th Ed.) 333; 1 Wigmore, op. cit. § 216; 8 R.C.L. 200. The only question, therefore, under these assignments of error, is whether the evidence objected to, regardless of the fact that it tended to prove the commission of other crimes by the accused, was relevant to the issues under the first count of this indictment.' *State* v. *Holliday,* 159 Conn. 169, 172–73, 268 A.2d 368; McCormick, Evidence (2d Ed.) § 190; 1 Wharton, . . . [Criminal Evidence (13th Ed.)] § 170; 29 Am. Jur. 2d 376, Evidence, § 325; see note, 93 L. Ed. 185." These offenses were near enough in time and location, and the descriptions of the intruder by each of the two women were so strikingly similar that, when added to the independent selection of the defendant in a subsequent lineup by both victims, the relevance and materiality of Miss C's testimony are quite apparent.

The nature of the act forced upon Miss B allows for little in the way of surviving physical evidence and it is not likely that physical corroborative evidence could be preserved. The fact, however, that a man of the same stature appeared, garbed in the manner of Miss B's assailant, wielding a knife, in the same apartment complex, a short time after the attack on Miss B, provides circumstantially

corroborative evidence that such an assailant existed, and his conversation with Miss C indicates that the intruder was of a violent character and was seeking another woman resident of the complex. With respect to the attack on Miss B, the evidence of the subsequent attack on Miss C clearly was relevant, and we find no error on its admission.

We next turn to the counts relating to Miss C. Burglary in the second degree and threatening are not within the range of offenses to which § 53a-68 applies and thus the testimony of Miss B was not admissible in this separate prosecution for the same reasons above outlined. Thus there is a strong probability that the jury employed evidence of the assault on Miss B in considering the other incident, particularly given the indelicate and repulsive nature of the deviate sexual act involved. Under the rationale of *State* v. *Silver,* supra, and *State* v. *Oliver,* supra, it is quite likely that the failure to sever did prejudice the defendant in this respect and thus we find that the defendant is entitled to a new trial on the counts relating to the incidents of October 26, 1973. The remaining assignments of error will be discussed only in their relation to the two counts charging offenses on October 20, 1973.

The defendant's next contention is that the state failed to corroborate fully the deviate sexual intercourse, claiming under the New York rule; see *People* v. *Linzy,* 31 N.Y.2d 99, 286 N.E.2d 440; that there must be corroboration of identity, compulsion, and the sexual act. It should be noted that our corroboration statute has been repealed. See Public Act 74-131. Section 53a-68 was modeled on § 130.15 of the New York Penal Law as it then existed, and this fact forms the basis for the defend-

ant's claim that we must be guided by the New York interpretation of the burden created by the corroboration rule. This argument has been adopted by one Superior Court opinion in Connecticut. *State* v. *Smith,* 30 Conn. Sup. 343, 316 A.2d 517. We reject, however, the New York interpretation and its acceptance in *State* v. *Smith,* supra.

Prior to the enactment of § 53a-68, Connecticut did not require specific corroboration. See *State* v. *Rybczyk,* 133 Conn. 598, 600, 53 A.2d 295; *State* v. *Chuchelow,* 131 Conn. 82, 83, 37 A.2d 689; *State* v. *Zimnaruk,* 128 Conn. 124, 126, 20 A.2d 613. New York, however, had a long-standing rule prior to the enactment of § 130.15 requiring corroboration of sex offenses. See *People* v. *O'Sullivan,* 104 N.Y. 481, 10 N.E. 880; *People* v. *Page,* 162 N.Y. 272, 56 N.E. 750. Thus, the New York statute is an embodiment of their strict common-law rule, while our statute altered the common-law approach to prosecution of sex offenses. The cases interpretative of the New York corroboration statute are not binding on this court, despite the similarity in statutory language. We are in accord with the comment drafted by the commission to revise the criminal statutes as to the intended effect of § 53a-68: "Although this language was taken from the New York law, it is not meant to incorporate the New York rule that every element of the offense must be corroborated; rather, it was meant to require corroboration only of at least one element of the crime."[3]

---

[3] See comment of commission to revise the criminal statutes, Connecticut General Statutes Annotated § 53a-68:

"This section requires that, with some exceptions, some corroboration of the alleged victim's testimony is necessary to conviction. This does not mean that there must be an eyewitness. The corroboration may be circumstantial. Although this language was taken

The corroboration of the assailant's identity by the testimony of Miss C and that of the police who observed the defendant on November 2, 1973, although circumstantial, is sufficient under our statute. Accordingly, we find that the court's charge on corroboration correctly stated the law and that, taken as a whole, it was adequate.[4]

The defendant next asserts that the court erred in failing to direct a verdict and later in failing to grant what appears to have been a motion in arrest of judgment on the claim that the identification by voice is, as a matter of law, insufficient. Several states have espoused such a principle; see *Hender-*

---

from the New York law, it is not meant to incorporate the New York rule that every element of the offense must be corroborated; rather, it was meant to require corroboration only of at least one element of the crime. This provision would change prior Connecticut law, which does not require corroboration but which, in the absence of corroboration, requires the fact-finder to weigh the credibility of the complainant with care, particularly if there are improbabilities suggested by the complainant's story or substantial controverting evidence."

[4] On the subject of corroboration the court charged, in part, as follows:

"In connection with this particular crime of deviate sexual intercourse, there is another statute or law which provides that a person shall not be convicted of this offense solely on the uncorroborated testimony of the alleged victim. This law was in force on October 20, 1973, when the crime is alleged to have occurred. The law also provides that the corroboration may be circumstantial, and I refer you to my explanation earlier as to what constitutes circumstantial evidence as contrasted with direct evidence. It is, therefore, necessary that at least one element of the crime of deviate sexual intercourse in the first degree be supported by some evidence, circumstantial or direct, other than the testimony of the victim in order to find the defendant guilty on that count. . . . In any event, your inquiry should be, aside from the direct testimony of Miss [B] . . . herself, is there evidence either circumstantial or direct which tends to prove that the accused committed the crime with which he is charged? Such evidence would be sufficient corroboration if it is proof of the necessary element which must be proved, namely that Jonas was in fact the assailant as claimed by . . . [Miss B]."

*son* v. *State,* 209 Ga. 238, 71 S.E.2d 628; *People* v. *Abelson,* 309 N.Y. 643, 132 N.E.2d 884; while others have required proof of either prior knowledge of the defendant's voice or some unique identifying characteristic. See *People* v. *Bozzi,* 36 Mich. App. 15, 193 N.W.2d 373; *Commonwealth* v. *Derembeis,* 120 Pa. Super. 158, 182 A. 85; *Walker* v. *State,* 50 Tex. Crim. App. 221, 96 S.W. 35; *State* v. *Karas,* 43 Utah 506, 136 P. 788. We adhere, however, to the majority view and accept voice identification provided that there is a basis of comparison for making the identification, the opportunity for which may come either before or after the event. 2 Wigmore, Evidence (3d Ed.) § 660; 1 Wharton, Criminal Evidence (13th Ed.) § 189; note, "Identification of Accused by His Voice," 70 A.L.R.2d 995, and cases cited therein. Miss B selected the defendant by means of voice and stature both at the lineup and during trial. She testified that during the incident, which lasted about a half hour, she had ample opportunity to observe her assailant's voice, which she described as very distinctive. The evidence presented a question of fact and the court properly referred it to the consideration of the jury.

The defendant finally assigns error in various portions of the court's charge not previously discussed. The defendant offered alibi evidence and complained of the court's charge as to any possible interest of alibi witnesses. This instruction was in conformity with that approved recently in *State* v. *Cari,* 163 Conn. 174, 181–82, 303 A.2d 7. The court also advised the jury that they might consider the importance to the defendant of the litigation in weighing credibility. Under our recent decisions in *State* v. *Moynahan,* 164 Conn. 560, 574, 325 A.2d

199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219, and *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87, cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186, such a charge was proper. The defendant also claims that the court denigrated the presumption of innocence by referring to the law's duty to protect society and innocent persons but this charge also is one which has been approved in our recent decisions. *State* v. *Guthridge,* supra, 154, and *State* v. *Cari,* supra, 180–81, and we are not compelled to reach a different result in this case. The remaining assignments of error as to the charge are without merit.

There is error in part, the judgment is affirmed except with regard to the third and fourth counts concerning the incidents of October 26, 1973, and, as to those counts only, the judgment is vacated and a new trial is ordered.

In this opinion HOUSE, C. J., LOISELLE and BARBER, Js., concurred.

BOGDANSKI, J. (concurring and dissenting). I agree that there was prejudicial error in the refusal to separate the charges, but would also find error in the trial court's charge to the jury.

The accused in this case testified on his own behalf. Thereafter the court charged the jury as follows: "Now, an accused person is not obliged to take the witness stand in his own behalf. On the other hand, he has a perfect right to do so, as this defendant has done. In weighing the testimony this accused has given to you, you should apply the same principles by which the testimony of other witnesses is tested. You may consider the importance to him of the outcome of the trial and his motive on that

account for not telling the truth. An accused person, having taken the witness stand, stands before you just like any other witness, and is entitled to the same consideration and must have his testimony measured in the same way as any other witness, including, however, his interest in the verdict you are to render."

The defendant took exception to that charge, claiming that it offended his rights to due process by unduly singling out his testimony; by denigrating the weight to be accorded his testimony compared to that of other witnesses; and by depriving him of the presumption of innocence that is accorded to every criminal defendant. I am persuaded by the circumstances of the present case that that argument has merit and withdraw my earlier support for such a charge. See *State* v. *Moynahan,* 164 Conn. 560, 574, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219; *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87, cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186.

A defendant is presumed innocent until proven guilty; *Coffin* v. *United States,* 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481; *Deutch* v. *United States,* 367 U.S. 456, 471, 81 S. Ct. 1587, 6 L. Ed. 2d 963; and if he does not testify, no comment can be made upon his failure to do so. *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106. The charge in this case placed a premium on the defendant's decision to testify by relegating his assertion of innocence to a less credible category of testimony than that of the complaining witnesses. By creating such a circumstance, the charge under consideration substantially undermines the presumption that the accused is innocent by permitting the jury to

attribute a motive to the defendant that can only attach if he is indeed guilty as charged. "[T]he accused's right to a fair trial in a fair tribunal is the very foundation of due process. '. . . Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749; *Estes* v. *Texas,* 381 U.S. 532, 543, 85 S. Ct. 1628, 14 L. Ed. 2d 543." *Aillon* v. *State,* 168 Conn. 541, 546, 363 A.2d 49. To single out the defendant for exercising his right to testify is equally as repugnant as commenting on the exercise of his right to remain silent.

The better rule is to limit the charge to a general statement of the elements by which all witnesses' testimony should be weighed and not to single out the defendant's testimony as worth less than that of any other witness. See, e.g., *United States* v. *Brown,* 453 F.2d 101, 107 (8th Cir.), cert. denied, 405 U.S. 978, 92 S. Ct. 1205, 31 L. Ed. 2d 253; *Garvin* v. *State,* 255 Ind. 215, 217–22, 263 N.E.2d 371; *State* v. *Bester,* 167 N.W.2d 705, 706–10 (Iowa); *Hall* v. *State,* 250 Miss. 253, 265–67, 165 So. 2d 345; *State* v. *Finkelstein,* 269 Mo. 612, 618–22, 191 S.W. 1002; *Graves* v. *State,* 82 Nev. 137, 138–42, 413 P.2d 503; *Stewart* v. *State,* 484 S.W.2d 77, 79 (Tenn. Crim. App.); and cases cited at 85 A.L.R. 577. See also *Bryson* v. *State,* 291 So. 2d 693 (Miss.); *State* v. *Bruyere,* 110 R.I. 426, 293 A.2d 311.

I would therefore find error, set aside the judgment on all four counts, and order new trials.